WEST, Administrator, Respondent, vs. BAYFIELD MILL COMPANY, Appellant.

*March 13—April 3, 1912.*

*Appeal: Law of the case: Decision on former appeal: Master and servant: Death caused by unguarded gearing: Contributory negligence: Duty of servant to notify master of defects: Duty of master as to guarding gearing: Instructions to jury: Damages: Evidence: Measure of widow's loss: Excessive damages.*

1. The decision of this court on a former appeal, that the question whether or not the gearing by which plaintiff's intestate was injured was securely guarded was one for the jury, is conclusive on a second trial, where the evidence for plaintiff is substantially the same, although additional contradictory evidence is given on behalf of the defendant.

2. Failure of an employee in a sawmill either to notify his superior that a board guarding a gearing was off or to repair it himself with the tools at hand, during an interval of ten minutes when the mill was not running, cannot be said as a matter of law to have been contributory negligence, it appearing that he had numerous duties to perform during such interval.

3. In an action to recover for a personal injury causing death it was not error to refuse a requested instruction as to contributory negligence which, though perhaps not absolutely erroneous, was unnecessarily long, involved, and lacking in clarity.

4. It is not always an absolute duty of an employee, upon discovering that machinery at which he is at work is out of repair, to inform his master of that fact; and a requested instruction laying down an unbending rule of that nature was properly refused.

5. Whether or not such a duty rests upon the employee may depend on numerous circumstances, such as the character of the defect, whether it be serious or trifling, the apparent imminence of danger therefrom, and the duties of the employee in other directions.

6. An instruction to the effect that an employer was required to guard a dangerous gearing "in such a manner" as is usually done by employers of ordinary caution in the same line of business and under the same circumstances, is construed as relating to the effectiveness of the guard and not to the particular method employed, especially as that idea was clearly expressed in another part of the charge; and thus understood the instruction was not misleading.

7. It being admitted that plaintiff's intestate was caught in the gearing of the defendant's mill and that he died as a result of the injuries received, evidence as to the distressing condition of his body after the machinery was stopped should not have been received.

8. In an action brought for the benefit of a widow to recover for the death of her husband, the damages are limited to the pecuniary loss to the widow, and that loss is to be measured by the reasonable value of her support and protection during the probable lifetime of the deceased and such sum as she might reasonably expect to receive at his death out of the accumulations which he might probably make.

9. For the death of a laboring man fifty-three years of age, whose earnings did not exceed $500 per year and who had accumulated nothing at the time of his death, an award of $7,500, reduced by

the trial court to $6,600, was still too large, and the judgment is accordingly reversed, with the option to plaintiff to remit all in excess of $4,750, the amount awarded by the jury on a former trial.

APPEAL from a judgment of the circuit court for Bayfield county: JOHN K. PARISH, Circuit Judge. *Reversed.*

This is an action to recover damages for the death of one Philip La Pointe, plaintiff's intestate, which death is alleged to have been caused by the defendant's failure to securely guard a certain bevel gearing at the side of a live-roller table in the defendant's sawmill. A judgment for the plaintiff upon a previous trial was reversed by this court for error, and is reported in 144 Wis. 106, 128 N. W. 992. The machinery is there more fully described and it seems unnecessary to repeat the description here. Upon the present trial the jury returned the following special verdict:

"(1) Did the defendant use ordinary care to securely guard the gearing in which the deceased, Philip La Pointe, was injured before said accident? *A.* No.

"(2) If you answer question No. 1 by 'No,' was the failure of the defendant to use ordinary care to securely guard said gearing the proximate cause of the injuries to the deceased? *A.* Yes.

"(3) Did any want of ordinary care on the part of the deceased proximately contribute to produce his injuries? *A.* No.

"(4) What sum will compensate for the death of plaintiff's intestate, Philip La Pointe? *A.* $7,500."

Motions to change the answers and for judgment for defendant were overruled, but defendant's motion for a new trial was granted unless plaintiff remitted $900 from the verdict. The plaintiff filed a remission in accordance with this order and judgment was entered for the plaintiff for $6,948, damages and costs, from which the defendant appeals.

For the appellant there was a brief by *Williams & Stern,* and oral argument by *B. F. Williams.*

For the respondent there was a brief by *H. W. Dietrich,* attorney, and *John Jenswold, Jr.,* of counsel, and oral argument by *Mr. Dietrich.*

WINSLOW, C. J.   It was argued by appellant now, as it was argued upon the previous appeal, that the court should have directed a verdict for the defendant because it appeared as matter of law (1) that the defendant had securely guarded the gear, and (2) that the deceased assumed the risk or was guilty of contributory negligence, or both.   These contentions were overruled upon the previous appeal, and that decision would, on familiar principles, form the law of the case upon the second trial if the evidence were substantially the same.   The plaintiff claims, however, that there was additional evidence on the present trial tending to show a different state of facts from that shown by the evidence on the former trial.   It is true that upon the present trial there was evidence on the part of the defendant not given on the former trial tending to show that the guard board, in addition to being nailed at the top, was supported by two upright 2 x 10's against which the inner face of the board rested, thus preventing it from bending inward under pressure.   On the part of the plaintiff, however, the evidence of several witnesses was substantially the same as before, to wit, that the board was only held in place by nails along the top edge and had no other support.   This evidence was not inherently incredible, and if believed by the jury would present exactly the same condition in this respect as was considered by this court upon the former appeal, hence the decision then made is conclusive now.

Again it is said, upon the question of contributory negligence, that the former decision is not conclusive because there is evidence now to the effect that the mill stopped sawing for about ten minutes prior to the accident, hence that the intestate had ample time to either notify his superiors of the fact

that the guard board was off, or to have repaired it himself
with tools which were proven to be near at hand. There
seem to be two answers to this contention: *first,* the sawyer
testifies that sawing was actually going on at the time of the
accident; and *second,* the deceased had numerous duties in
connection with turning and straightening of cants, the oper-
ation of the resaw, the scraping of rotten logs and bark from
the carriage track, and the changing of saws, and it cannot
be said that the evidence clearly shows that he had ample time
to make the repair himself or notify his superior of the neces-
sity therefor, even if it be conceded that it was his duty to do
either of these things under any circumstances.

The following instructions requested by defendant were re-
fused, and error is assigned upon each of these rulings:

"In connection with question 3, you are instructed that the
plaintiff was guilty of a want of ordinary care, if you find
from the evidence that had the plaintiff exercised any care or
caution which was under the circumstances reasonable, prac-
tical, and available, he might have avoided the injuries result-
ing in his being caught in the gear in question, and in case
you so find, your answer to question 3 will be 'Yes.'

"In respect to question 3, you are instructed that when an
employee discovers that the machinery in connection with
which he is obliged to work is out of repair, it is his duty to
inform his master of this fact, and if you find from the evi-
dence that the deceased, Philip La Pointe, had reasonable op-
portunity, after he discovered that the guard board over the
gearing in question was off, to inform any person in authority
in the defendant's employ of such fact, prior to his accident,
then he was guilty of negligence in failing to report such fact,
and your answer to question 3 will be 'Yes.' "

As to the first of these instructions, while we are not pre-
pared to say that it would have been erroneous to give it, we
certainly do not think it was error to refuse it. Ordinary
care has been frequently defined by this court as that care
which the great majority of people would and do ordinarily
use under like or similar circumstances. Some such simple

statement as this is preferable to any long or involved defini-
tion.    The instruction requested, in addition to the manifest
inaccuracy of its reference to the plaintiff instead of the de-
ceased, is certainly lacking in clarity, if not actually confus-
ing, and we cannot say that it was error to refuse it.

The second requested instruction lays down the abstract
proposition that it is the duty of an employee, on discovering
that machinery on which he is working is out of repair, to in-
form his master of the fact.    This sweeping proposition can-
not be approved.    No such absolute duty can be said to exist
in every case.    The question may depend on numerous con-
siderations, such as the character of the defect, whether it be
serious or trifling, the apparent imminence of danger there-
from, the duties of the employee in other directions, etc.    It
is evident that no unbending rule of this nature can be laid
down, and hence the refusal of the second instruction cannot
be considered erroneous, even if the latter clause thereof,
standing alone, might properly have been given—a question
not decided.

The court charged the jury at the request of the defendant
as follows:

"In respect to question 1, you are instructed that if the de-
fendant furnished such a guard, or as effective a guard as or-
dinarily careful and prudent employers in the same line of
business ordinarily use, under like circumstances, it had then
discharged its full duty under the law, requiring it to securely
guard such gearing, and in case you so find from the evidence,
your answer to this question will be 'Yes.' "

Later in the charge the following instruction was given on
this same point:

"By securely guarding, the defendant was required to
guard the machine in question in such a manner as is usually
done by employers of ordinary caution in the same line of
business and under the same circumstances, and if it did so,
it discharged the duties imposed upon it and the guard so fur-
nished is in the legal sense reasonably safe and the alleged
dangerous machine has been securely guarded within the

meaning of the statute, and if you find and believe from the whole evidence that this is the fact you will answer question number 1 by 'Yes.' "

Error is here charged because it is said that the second of these instructions absolutely required the defendant to guard the gearing in the manner usually employed by other employers, whereas it could discharge its duty equally well by furnishing as effective a guard as other ordinarily careful employers furnish, though not the same kind. This last idea is expressed in the first instruction quoted above, and it must be admitted that the second instruction is not happily worded, especially in the use of the word "required." We do not think, however, that the jury could have been misled by the inaccuracy. In view of the fact that no intimation was given to the jury of any intention to modify or withdraw the first instruction, we think the jury must have understood the words "in *such* manner" in the second instruction to refer to the effectiveness of the manner of guarding rather than to the manner of its physical construction. In this view the two instructions are entirely harmonious and correct.

The only other contention which we deem of sufficient importance to require treatment is the contention that the damages, after reduction by the trial court, are excessive. In this connection it is to be noted that the trial court, against timely objection, allowed evidence to be introduced showing the distressing, almost revolting, condition in which the body of the deceased was found when the machinery was finally stopped. There was no legitimate excuse for the introduction of this evidence. It was fully admitted by the defendant that the deceased was caught in the gearing and that he died as a result of the injuries received thereby. The only questions were whether the uncovered gearing constituted negligence, and whether, if so, the deceased was guilty of contributory negligence. Upon these questions the shocking condition of the body cast no light. The evidence could only tend to ex-

cite the sympathies and perhaps the passions of the jury, and it should not have been allowed. Had the deceased survived and brought action for the injuries which he received, it. might with some reason be claimed that this evidence was admissible, because he would be entitled to recover for his pain,. suffering,. and disfigurement. But there can be no such elements in the recovery in this action. Here the damages are limited to the pecuniary loss of the widow. *Rudiger v. C.,. St. P., M. & O. R. Co.* 101 Wis. 292, 77 N. W. 169. That loss is to be measured by the reasonable value of the widow's. support and. protection by the deceased during the time he would probably have lived, adding thereto such sum as she might reasonably expect to receive at his death out of the accumulations which he might probably make during his expectancy of life. *Rudiger v. C., St. P., M. & O. R. Co., supra.*

The plaintiff in this case was fifty-three years of age and. was a laboring man. His widow was fifty-one years of age. He had accumulated nothing and could not therefore be expected to make any accumulations during the remainder of his life. He was earning $1.75 per day during the mill season. At times he had received $2.25 per day. He worked in the woods for three or four months during the winter at about $35 per month. In addition he raised some garden produce, but his total income at the time of his death could not probably exceed $500 per year, and must be expected to decrease as he grew older.

His expectancy of life under the American experience tables was 18.79 years. Had he lived his wife could not, of course, reasonably expect to receive his entire earnings during that expectancy; a reasonable amount for his own support and. clothing would first have to be deducted. Her damages must necessarily be limited to such sum as, being put at interest, will each year, by taking a part of the principal and adding to the interest, yield the amount which she would in all rea-

sonable probability have received from him by way of support and protection during his expectancy of life.

Assuming that the deceased would earn just as much every year during his expectancy of life as he was earning at the time of his death (which is of course a practical impossibility), and that his wife might expect to receive $400 out of his yearly earnings of $500 each year (an amount which is plainly excessive), the present value of an annual allowance of $400 during his expectancy of life at five per cent. would be but $4,838.12 under the standard annuity tables. This sum in cash would purchase an annuity of $400 for his expectancy of life. The circuit judge was evidently convinced that the damages were excessive, and hence required the plaintiff to remit $900 from the verdict. On what basis he computed the amount of the remission we are not able to understand. If $7,500 was excessive, $6,600 was also excessive. The true rule is that where excessive damages are awarded by the jury in actions of this nature and there is no other prejudicial error, the trial court, or this court upon appeal, may properly end the matter without further litigation by giving the plaintiff the option to remit from the verdict a sum which will make the damages as small as a fair and unprejudiced jury would probably name. *Heimlich v. Tabor,* 123 Wis. 565, 102 N. W. 10; *Hackett v. Wis. Cent. R. Co.* 141 Wis. 464, 124 N. W. 1018. To allow a verdict for any larger sum than this would be to infringe upon the defendant's right of jury trial.

In the present case we have data upon the subject in the shape of the verdict for $4,750 rendered by the jury upon the former trial. That verdict was not attacked as prejudiced or excessive and it seems may well be considered to be as low a sum as an unprejudiced jury would probably name.

*By the Court.*—Judgment reversed, with costs, and action remanded for a new trial; with the option to the plaintiff, at

any time within thirty days after notice of the filing of the *remittitur* in the circuit court, to elect to enter judgment for $4,750 damages and costs.

On April 23, 1912, the foregoing mandate was amended by adding thereto the words:. "Interest to be computed on the damages from the date of the verdict."