EAGAN v. O'MALLEY
(No. 1790; May 2, 1933; 21 Pac. (2d) 821)

For the plaintiff in error, the cause was submitted on the brief of *Durham & Bacheller,* of Casper, Wyoming.

The cause was submitted for defendant in error on the brief of *W. B. Cobb,* of Casper, Wyoming, and *Dawson & Daniels,* of Douglas, Wyoming.

508

RINER, Justice.

On the night of June 8, 1929, at a point approximately one mile east of the City of Casper, an automobile accident occurred in which Carma C. O'Malley, the plaintiff below, was injured. Dan Eagan, the defendant in the District Court, was the driver of the car in which she was then riding. She at first instituted litigation grounded on alleged negligence against both Philip S. Mahoney, the driver of the other car involved in the accident, and the said Eagan. Unable for the time to obtain service on the latter, the case was prosecuted on change of venue from Natrona County to its ultimate conclusion against Mahoney only—a verdict for her against him in the sum of $7,700, set aside on motion and judgment entered by the District Court of Sheridan County notwithstanding the verdict in Mahoney's favor, said judgment being affirmed by this court. Carma C. O'Malley, etc. v. Dan Eagan, et al., 43 Wyo. 233, 2 Pac. (2d) 1063; rehearing denied, 43 Wyo. 350, 5 P. (2d) 276, 77 A. L. R. 582.

Before the final disposition of the case just mentioned, the plaintiff had commenced another action in the District Court of Natrona County against Eagan wherein

he answered and the case proceeded to trial in the District Court of Converse County, having been removed there on change of venue. This trial resulted, on May 9, 1932, in the verdict of a jury in favor of Miss O'Malley for $10,-497, upon which judgment was duly entered. It is from that judgment that these proceedings in error have been prosecuted. The parties will hereinafter usually be referred to, the defendant in error as the plaintiff, and the plaintiff in error, as the defendant. As the facts relative to the accident were quite fully set out in the opinion appearing in the volume of the Wyoming reports cited above, it will be unnecessary to reiterate them here. Such matters as may be requisite to a proper understanding of the questions now submitted for determination will be mentioned in connection with their discussion.

In the *voir dire* examination of each member of the jury panel called to sit as a trial juror in the case, the District Court allowed counsel for the plaintiff to ask, over the objection and exception of the defendant, the following question:

"Do you have any interest, either as agent or representative or officer, in any insurance company writing policies of indemnity insurance, indemnifying persons or corporations against loss by reason of negligent operation of automobiles?"

This ruling is assigned and argued as error, it being said that the question propounded disclosed to the jury the fact that the defendant was insured against liability incurred by reason of the accident. So far as the language used in the interrogatory itself is concerned, undoubtedly it did not do this. However, the argument is presented that such a line of questioning tends to lead jurors to believe that an insurance company is in the background and will have to respond, under its contract with the defendant, to any judgment recovered.

This suggestion reflects the notion, whether true or not, that jurors are inclined to be prejudiced against insurance companies and that when it becomes known that the defendant in a case carries insurance indemnifying him against loss, the action is less likely to be viewed on its merits by the triers of fact and they are more inclined to render a verdict for the plaintiff and in a larger sum than would be so were the defendant, an individual and not a corporation, obliged to bear the burden of the judgment alone.

Whether the defendant is insured against liability ordinarily has no relevancy to the issue of negligence and is erroneously received in evidence. Simpson v. Foundation Company, 201 N. Y. 479, 490, 95 N. E. 10; Ann Cas. 1912 B, 321; Wigmore on Evidence (2d Ed.), § 282 and cases cited. It is proper for the trial court, in the exercise of a wise discretion, to guard against the injection of such an element into the case, both on account of its irrelevancy and because of the notion mentioned above, in order that litigants may have their controversies determined with the utmost impartiality. A comprehensive examination of reported cases shows that, in many instances, the courts have ordered a mistrial or, on appeal, a reversal, where counsel have improperly placed before juries the fact that the defendant is protected by indemnity insurance. The rule should be, as we think, that when counsel's conduct and his questions in the case are fairly conducive to the accomplishment of a legitimate end in the proceedings, if, incidentally, prejudice results therefrom to the adverse party, it may not be avoided. When, however, his conduct and inquiries pass the bounds of serving that legitimate purpose, it should then be the duty of the trial court to interfere and, if that is not done, the matter should be appropriately dealt with on review. Obviously, all parties interested in a controversy are, in advance, aware of the various steps the law pre-

scribes that the course of a trial shall take and they enter upon it knowing just what procedure may be expected.

The examination of jurors on *voir dire,* when properly conducted, as all members of the profession know, serves a useful purpose in selecting triers of fact. Among other things, it enables both parties, plaintiff and defendant alike, to know the relationship, if any, existing between any juror and a party who, though he may not appear so of record, is still a party in interest. Litigants should be given reasonable opportunity to make inquiries which will disclose such relationships and thereby be enabled to intelligently exercise their right of challenge as to prospective jurors and thus to secure the impartial and disinterested jury which the law contemplates.

As a result of an extended examination of the cases dealing with the question, we consider it easily deducible that the great weight of authority and the better reasoning alike sanction the view that counsel for the plaintiff is entitled in good faith to inquire whether any juror is interested in or connected with any insurance or casualty company that may be interested in the case as an insurer of the defendant's liability. See 35 C. J. 394; 56 A. L. R. 1454, note; 74 A. L. R. 860, note. Some of the more recent cases approving this rule—all decided during the year 1932—are: Morton v. Holscher, —— S. D. ——, 243 N. W. 89; Halbrook v. Williams, 185 Ark. 885, 50 S. W. (2d) 243; Jenkins v. Chase, —— Mo. ——, 53 S. W. (2d) 21; Wack v. F. E. Schoenberg Mfg. Co., —— Mo. ——, 53 S. W. (2d) 28; Pate v. Pickwick Stages System, —— Cal. App. ——, 14 Pac. (2d) 174; Balle v. Smith, —— Utah ——, 17 P. (2d) 224.

In the case at bar, nothing appears in the record that we can see which would indicate that counsel was not propounding the inquiry quoted above in good faith. There appears to have been no further reference made to the matter, after the necessary questions were put and

answered, or after the conclusion of the *voir dire* examination of the jurors. The fact that most of the jury panel was composed of ranchers or farmers does not make the possibility of finding one interested in liability insurance so remote as to indicate bad faith on counsel's part. Liability insurance is a common business and people in many walks of life are more or less interested in it.

Perhaps it may not be out of place here to refer to the language recently used by the Supreme Court of Michigan in Harker v. Bushouse, 254 Mich. 187, 236 N. W. 222, 224, wherein the trial judges of that jurisdiction who examine prospective jurors are afforded a sound and sensible method of procedure in a matter of this kind. In the cited case, the court said:

"We also might suggest to the trial judges who so frequently examine the jury on the *voir dire* that they might make a brief statement calling attention to the fact that some automobile drivers do and others do not carry insurance; that under no circumstances should it make any difference whatever as to the outcome of the case whether such insurance is carried or not; that the judge asks the question about to be put in every negligence case and that he does not know nor does the asking of the question signify, whether defendant carried insurance; that the law does not permit any further reference to be made to the subject during the trial of the case, but that the plaintiff has a right to know whether any of the members of the jury are officers, employees, or stockholders in any insurance company or members of any mutual insurance company. If, after asking the question, the answer is in the affirmative, further questions may follow and challenges made, if desired. If it is in the negative, the question is disposed of with finality. Such an action on the part of the trial judges should result in the further exclusion of all reference to insurance under penalty of a reversal of the case should counsel persist in again purposely referring to it."

If counsel, in their interrogatories under our state practice, will guard the inquiry as outlined in the excerpt given above, the necessary information for the exercise of challenges can be secured with reasonable fairness to all concerned. In case the interrogatory is put without the cautionary suggestions, it would seem the defendant, if he so desires, should be accorded the right to an instruction to be given the jury embodying them.

The first clause of Instruction No. 9 given the jury read:

"If you find in favor of the plaintiff and against the defendant then you should assess in your verdict such an amount of damages, not exceeding the amount sued for, as will reasonably compensate her for the injuries, if any, which you find from the evidence she has sustained as the result of the collision."

It is said that the giving of this instruction was prejudicial error in that it permitted the jury, in its discretion, to return a verdict in favor of the plaintiff for the full amount claimed in plaintiff's petition, namely, $74,250. Our attention is directed to the case of Hall Oil Company v. Barquin, 33 Wyo. 92, 160; 237 Pac. 255, 279 where it was intimated, relative to the question of punitive damages in the case, that the better rule is to refrain from instructing the jury that such damages may be allowed within the limits of the amount claimed by the petition and that this is especially so where the amount demanded is much beyond any possible reasonable expectation of recovery. In that case, the instruction attacked concluded with the statement that the amount of punitive damages was to be fixed at such sum as the jury deemed proper "within the limits of the amount claimed in the petition." However, this court remarked, in commenting on the questioned instruction:

514

"But we are not prepared to hold that said instruction in the respect mentioned was clearly so prejudicial as to require a reversal upon that ground alone. The amount allowed, being so much less than the extravagant claim of the petition, would seem to furnish no substantial ground for assuming that the verdict was necessarily affected by the instruction referring thereto. But if, in any way, it may have influenced the amount of the verdict, a sufficient remedy will, we think be afforded by the order we shall enter for the disposition of the case here."

Referring to the case of St. L. S. W. Ry. Co. v. Myzell, 87 Ark. 123, 112 S. W. 203, it was also said:

"The court stated that the objection was that it told the jury that they might award damages in any sum 'not exceeding the respective amounts sued for.' And that in so far as it related to compensatory damages it was not objectionable; but that as to exemplary damages it was erroneous."

Again, in Phifer v. Baker, 34 Wyo. 415, 244 P. 637, 653 an instruction concerning compensatory damages closed with the statement, "The amount so awarded, if any, shall not exceed the amount prayed for in plaintiff's petition, to-wit, $20,000." Responding to a criticism of this instruction, the following language was employed in the opinion:

"Some comment is made in the brief about such reference to the amount of damages prayed for in the petition, but we think that such amount was not referred to in a manner to indicate any view of the court that an amount up to that amount might be sustainable upon the evidence, and we perceive no ground for holding that the instruction was in that particular prejudicial. Indeed, the verdict was for only half the amount prayed for, tending somewhat at least to show the absence of any prejudice by the mention of the amount prayed for in the instruction. Nor do we see how any surer, safer or clearer

standard might be stated for the fixing of damages for pain and suffering, either physical or mental, or for a disfigurement or deformity that is not subject to any legal measure.''

In the instant case, punitive damages are not claimed and the amount awarded was so far below the extravagant sum demanded in plaintiff's pleading that it is difficult to see how it could be thought that the jury were affected by the criticised language of the instruction given. Additionally, we shall have something to say on the matter of allowable damages subsequently herein.

The following instruction was given to the jury over the objection and exception of the defendant:

''An automobile driver proceeding on the right side of the traveled portion of the highway may assume that the driver of a vehicle approaching on the left and wrong side will turn out in time to avoid a collision, and if it reasonably appears to the driver, who is on the proper side, that there will be a collision unless he turns to the left, and acting upon such appearance he swerves his car in that direction and in doing so does what an ordinarily prudent person would have done under similar circumstances, he does not violate the law of the road and is not guilty of negligence.''

It is argued that this was a comment on the evidence on the part of the trial judge wherein it was assumed as a fact that Eagan was on the wrong side of the road and that Mahoney was without fault. We are unable to see that these contentions are sound. The claim is not made and, indeed, could not be well made, in view of what was said by this court in O'Malley v. Eagan, supra, that the instruction was not a correct statement of the law. There was evidence in the case that Eagan was on the wrong side of the road and that Mahoney was on the right side of the highway, as the accident threatened. It

was the plaintiff's theory of the case that Eagan's negligence in being where he had no right to be, on the highway, was the proximate cause of the accident. She certainly had the right to have that theory submitted to the jury if there was any substantial evidence to support it. 14 R. C. L. 790, § 51; Orander v. Stafford, 98 W. Va. 499, 127 S. E. 330, 42 A. L. R. 780. When this instruction is considered in conjunction with others given in the case, especially the one concerning the burden of proof, as the jury were explicitly told to construe it, we consider that no prejudicial error was committed through its use.

Finally, the assignment of error is presented and argued that the verdict is excessive and with this contention we are inclined to agree. The verdict of the jury rendered on the previous trial involving plaintiff's injuries on account of this accident was $7,700, and, in the case at bar, $10,497, as has been stated. A period of but two years elapsed between their several renditions. It is proper for us to consider these verdicts in the light of the evidence before us in this record and upon a careful survey of verdicts given in somewhat similar cases. West v. Bayfield Mill Company, 149 Wis. 145, 135 N. W. 478; Simoneau v. Pacific Electric Ry. Co., 166 Cal. 264, 136 Pac. 544, 49 L. R. A. (N. S.) 737; Portland Cement Co., 59 Misc. 230, 112 N. Y. S. 240, 8 R. C. L. 678, 679, § 217.

Plaintiff testified that, at the time of the accident, she was twenty years old, that she had worked during the year 1927 as stenographer and had received $100 a month, but that immediately preceding the accident she had not been working steadily; that she had had different small jobs. Dr. McLellan, a witness for the plaintiff and who attended her in consequence of the injuries she sustained on account of the collision, in the course of his testimony stated that she suffered a deep, jagged, cut on the right side of the head, a laceration of the upper lip, and a jag-

ged wound just below the knee cap of the left leg, some bruises, and nervous shock; that these cuts and lacerations, which have healed, have left scars; that due to the injury to the leg, there is a weakened knee joint and that this condition will be permanent; that he thought there was an improvement in her nervous condition during the year preceding the trial, until a physical examination was had as an incident to the trial of this case, at which time she manifested hysteria, inability to concentrate on any one subject; that her nervous condition is aggravated by the present litigation and that, as soon as it is terminated, there might be a marked improvement in her condition; that, while she is not at present able to work as a stenographer on account of her nervous affection, the injuries to her head, face, and leg would not interfere with that occupation.

Dr. Riach, a specialist in nervous diseases, as a witness for the defense, testified on cross-examination that, in his opinion, the psychoneurosis condition of the plaintiff was the most serious effect suffered by her in consequence of the accident; that this condition is at present moderately disabling, producing a 50 percent reduction in efficiency in performing her work as stenographer; that, with the removal of all suggesting circumstances such as the pending litigation, she should show marked improvement within six months.

Miss O'Malley also stated on the witness stand, in response to her own counsel's questions, that since she had been able to walk without a cane she did not know how many times she had danced, but "quite a few"; that she thought she could dance as well as she did prior to the accident, but that it was more of an effort.

It would seem that the medical testimony reasonably agrees that, with the removal of the disturbing influence upon plaintiff's nervous condition caused by the pending litigation, she should improve so far as that, the most

serious item of her injuries is concerned. The scars left by the healed wounds do not appear to be severely disfiguring, and she herself says that she is able to take her part in social amusements.

We shall not undertake to review verdicts and cases where injuries somewhat akin to those suffered by the plaintiff have been the subject of consideration for the purpose of awarding compensatory damages, although we have examined a great many. Necessarily, each case stands upon its own facts and, in a greater or less degree, is helpful in arriving at an average relative to other cases of similar nature. We have kept constantly in view the fact that plaintiff has passed through a severe and nerve-racking experience and has endured pain, suffering, and inconvenience in no inconsiderable amount. We do not think that the jury, in making the award they did, were influenced by passion or prejudice. Nothing in the record would so indicate. But, taking into consideration the amount of the previous verdict awarded plaintiff for the injuries incurred in the accident here involved, the character of her injuries, her improvement and likelihood of improvement in the future, we feel that a reduction in the amount of the damages awarded should, in justice, be made.

In this connection, we may not improperly recall that under the Workmen's Compensation Law (Comp. St. 1920, Sec. 4315 et seq. as amended) enacted through authority given by the people of this state, it is declared that, for an injury incurred in extra-hazardous occupations resulting in permanent total disability through the loss of both legs or both arms, total loss of eyesight, paralysis, or other conditions which forever incapacitate the industrial worker from earning a livelihood, there shall be allowed by the law the ultimate sum of $4,000. It is true the legislature has set no limit to the amount of recovery in automobile accident cases, yet pain, suffer-

ing, inconvenience, nerve shock, and loss of earning power undeniably exist in industrial injuries of the devastating character listed by the law as permanent total disabilities.

Our conclusion is that the judgment of the District Court should be affirmed upon condition that plaintiff file a remittitur in the District Court, within thirty days after filing of the mandate issued from this court, of the sum of $1,497, leaving the judgment at the sum of $9,000 as of the date thereof. Unless this remittitur is so filed, the judgment will be reversed and a new trial ordered. The costs in this court shall be taxed three-fourths to plaintiff in error and one-fourth to defendant in error.

*Affirmed on condition.*

KIMBALL, Ch. J., and BLUME, J., concur.