145 So.2d 219

**LIBERTY NATIONAL LIFE INSURANCE COMPANY**

v.

**Geraldine HARRISON.**

8 Div. 9–11.

Supreme Court of Alabama.

Sept. 20, 1962.

Rankin Fite, Hamilton, and Scruggs & Scruggs, Guntersville, for appellee.

COLEMAN, Justice.

This is an appeal by defendant, the insurer, from judgments for plaintiff, the beneficiary, in actions to recover accidental death benefits provided for in three insurance policies on the life of the insured, Harrison. Ordinary death benefits due under the policies have been paid.

A separate action was brought on each policy, but the actions were consolidated on the trial and on this appeal. Plaintiff and defendant are the same in each action. The case was tried without a jury.

Each complaint claims a sum certain due on a policy whereby defendant insured the

Starnes & Starnes, Guntersville, and Wm. N. Ray, Birmingham, for appellant.

life of Harrison "against bodily injuries effected solely through external, violent, and accidental means and effected directly and independently of all other causes." Plaintiff avers that Harrison, on May 27, 1957, received bodily injuries effected directly and independently of all other causes through external, violent, and accidental means, which resulted in his death on the date aforesaid.

The parties agreed as follows: to submit by pleading in short by consent; that the parties might submit the relevant, transcribed testimony of any witnesses who testified in the case of State v. Peyton which had been previously tried, subject to legal objections and exceptions thereto; and that, in addition to the transcribed testimony, either party might examine additional witnesses and present any other evidence deemed necessary.

The policies are in evidence. By one policy, defendant promised to pay on proof that insured " * * * has sustained bodily injuries effected solely through external, violent, and accidental means, which injuries have directly and independently of all other causes caused the death of the Insured * * * except that no benefit shall be payable * * * if death results * * from any of the Exclusions * * *" listed in the policy. Under exclusions, the policy recites that it does not provide any benefit for loss which results from:

"(b) the Insured's commission of, or attempt to commit, an assault or felony; * * *."

The other two policies provide that insurer will pay on proof that death resulted " * * * directly, and independently of all other causes, from bodily injuries sustained solely through violent, external and accidental means * * *," and further that no such accidental benefit shall be payable " * * * if death result * * * from participating in an assault or felony * *."

It was stipulated that the insured, Harrison, on May 27, 1957, "died of a gunshot or pistol wound which arose at or near * * *" a place where a certain plant was being constructed by Gulf States Construction Company. The evidence shows that on the stipulated occasion, several men were wounded and two, including Harrison, were killed by gunfire.

The stipulation shows that the death of insured resulted from injuries "effected" or "sustained" by violent and external means. Plaintiff contends that the cause of death was also accidental. Defendant contends to the contrary. Defendant contends that Harrison had voluntarily placed himself in a situation from which his death was not unforeseen and, therefore, not accidental; and also, that he was engaged in the affray and, for that reason, was excluded from coverage.

Plaintiff offered the transcribed testimony of some seventeen witnesses who had testified in the Peyton case. Defendant offered the transcribed testimony of nine such witnesses. With respect to the conduct of Harrison on the occasion of the shooting, the transcribed testimony is in irreconcilable conflict. For example:,

Ernest Peters testified that he did not know who fired the first shot, that Harrison was standing by his pick-up truck at that time, and that the witness did not see Harrison with a gun.

Peyton testified that Al Thomas was shooting point-blank at Harrison, that Harrison "never had a gun"; that Peyton did not shoot at Smith, did not shoot anybody, and did not tell any of the men to shoot anybody.

Jim Summers testified that Smith "started it," "he pulled that pistol out and went to shooting."

D. C. Maze testified that Al Thomas shot Harrison over the top of the car, that was the first shot fired, and Harrison did not have a gun.

On the other hand, Smith testified that the first shot fired hit him in the arm, that somebody fired the first shot from the highway, that Smith did not know who fired the first shot, that Peyton told one of the men to kill Smith, that the man shot Smith one time, and that Smith saw Peyton shoot at Smith four times.

Glenn Mathis testified that he saw Harrison; that Harrison had a pistol in his hand pointed at Humphrey; that Harrison said "I am going to drop you Bill," and started shooting; and that to the best of the witness' knowledge, Harrison's shot was the first shot fired.

Frank Burton testified that Harrison "opened firing," that Harrison had a nickel-plated pistol, that Harrison shot his gun until it would not shoot any more, that Harrison was shooting at Humphrey, and that Al Thomas did not kill Harrison.

Humphrey testified that he was shot by Harrison and thought Harrison fired the first shot.

In addition to transcribed testimony, plaintiff offered that of R. B. Hobson who testified ore tenus in the instant case. Defendant argues that the court erred in permitting Hobson, over defendant's objection that proper predicate had not been laid, to testify that the witness, Smith, made a statement to Hobson, as follows:

"Q Did you say anything to Mr. Smith then after Dr. Martin got back?

"A Is that the time Dr. Martin just stepped to the hall? He came back in the place where I was at with Mr. Smith. Dr. Martin was doing something, standing, I would say, in a foot and a half of Smith when he was doing this talking. I says, to him, 'Smith, who shot you?' He said, 'Hobson, I don't know but I know one

thing. That Al Thomas got the goddamn preacher'."

Harrison is sometimes called the preacher.

This testimony of Hobson was offered by plaintiff for the purpose of impeaching the transcribed testimony of Smith which defendant had offered in evidence under the agreement. Before the defendant's objection to the question was overruled and Hobson's testimony admitted as quoted above, a lengthy colloquy between court and counsel had taken place. Plaintiff's purpose in offering Hobson's testimony, defendant's objection, and the court's ruling are shown by the following excerpts from the colloquy:

"MR. SCRUGGS: Yes, Smith testified in that case Ed Peyton shot him. In this witness's presence he told the witness he didn't know who shot him. We expect that to be his answer. And then he stated Al Thomas shot the Preacher and, to quote his language, 'Hobson, Al got the goddamn Preacher.' That's what we offer to prove by him.

"MR. STARNES: We object to it. We think it is illegal, irrelevant, incompetent and immaterial.

"MR. SCRUGGS: When the man has already testified and they have offered his testimony?

"MR. STARNES: The proper predicate has not been laid.

\* \* \* \* \* \*

"MR. SCRUGGS: I want to call the Court's attention to Mr. Smith's testimony in which Mr. Smith said he didn't know who shot the Preacher. That's in the record. It is Smith's testimony. They have offered it. I want to offer it for the further purpose of impeaching Mr. Smith on the further proposition, and it is good as direct testimony,

to show what Smith said was contrary to what Smith testified on the trial. He testified that he did not know. He told this man, we offer to show this, that he did not know who shot him and he testified on his examination before that Ed Peyton is the man who shot him. It is directly in conflict with his testimony and if that is not impeaching a witness, I never have seen one impeached in my life.

"THE COURT: I will overrule the objection and still if all of this is not connected up somehow with the issues in this case I will have to exclude it.

"MR. SCRUGGS: That's right and when you read that record you will have to determine what should and should not be admitted.

"MR. STARNES: We reserve an exception to Your Honor's ruling that this testimony is relevant and material and that a proper predicate has been laid for the impeachment of R. W. Smith.

"MR. SCRUGGS: You can impeach a witness without a predicate by offering direct testimony to that effect. I want the question answered."

■ Examination of the transcribed testimony of Smith in the record before us has not disclosed any predicate laid to impeach him. We have not found where Smith was asked whether or not, at the specified time and place, he, Smith, made to Hobson the statement which Hobson says Smith made. We have not found where the trial court excluded Hobson's testimony. As this record stands, the court admitted the testimony over objection that proper predicate was lacking and, in so doing, the court erred to a reversal.

"There is possibly no rule governing the production and introduction of evidence in any case better understood or more rigidly enforced, than is the rule which requires that a party, who wishes to impeach the testimony of an opposing witness by showing contradictory statements, shall lay a proper predicate therefor. The rule requires 'that the attention of the witness, who is attempted to be discredited, should be called to the time, place and person involved in the supposed contradiction, in order that the faculties of the mind may be put in motion, and the memory aided by the train of ideas which such circumstances would be likely to suggest with reference to the subject-matter of inquiry. 4 Phil.Ev. 761. The rule, however, is satisfied, when the attention of the witness is called with reasonable certainty to the subject of the previous declarations.' Nelson v. Iverson, 24 Ala. 9, 60 Am.Dec. 442." Bridges v. State, 225 Ala. 81, 86, 142 So. 56, 60.

■ This court has held that the testimony of a witness, given on a former trial and admitted on a later trial because the witness was then unavailable, is not impeachable by proof of his self-contradictory statement unless a predicate was laid in such former testimony. The Law of Evidence in Alabama, McElroy, Second Edition, Vol. 1, § 157.02. This court said:

" * * * It was not competent to show that the absent witness had made statements different or contradictory to those proven to have been testified to by him on the former trials, and there was no predicate for such impeaching testimony. In all such cases it is necessary to first interrogate the witness himself as to such contradictory statements, giving time and place with reasonable certainty." Pruitt v. State, 92 Ala. 41, 43, 9 So. 406, 407.

In the instant case, plaintiff argues:

" * * * The mere fact that testimony of all the witnesses was not iden-

tical is no cause to reverse the Trial Court where there was ample evidence to support its judgments and these cases are therefore due to be affirmed and the Trial Court's action permitted to stand. * * *"

This argument of plaintiff is the same argument which was overruled by the majority of this court in First National Bank of Talladega v. Chaffin, 118 Ala. 246, 24 So. 80. It has long been the rule that where a cause is tried by the court without a jury, the admission of illegal evidence raises the presumption of injury, and requires the reversal of the judgment unless the remaining evidence is without conflict and is sufficient to support the judgment. When this announcement was made, over a vigorous dissent, in First National Bank of Talladega v. Chaffin, supra, it overruled many cases. The rule has been adhered to in later decisions. Deal v. Houston County, 201 Ala. 431, 78 So. 809; Lallande v. Brown, 121 Ala. 513, 25 So. 997; Miller v. Mayer, 124 Ala. 434, 26 So. 892; Black v. Pate, 130 Ala. 514, 30 So. 434; Romano v. Brooks, 142 Ala. 514, 39 So. 213; Brandon v. Progress Distilling Co., 167 Ala. 365, 52 So. 640; Denson v. Kirkpatrick Drilling Co., 225 Ala. 473, 144 So. 86; Dutton v. State, 226 Ala. 1, 145 So. 581; Pigford v. Billingsley, 264 Ala. 29, 84 So.2d 664.

In view of another trial, we are not to be understood as commenting on the evidence or its effect other than to say that with Hobson's testimony excluded, the remaining evidence is in conflict. We cannot know how far the trial court was influenced in the finding of fact by the evidence erroneously admitted.

We are of opinion that the judgment ought to be reversed and the cause remanded for another trial.

Reversed and remanded.

LIVINGSTON, C. J., and GOODWYN and HARWOOD, JJ., concur.