William J. HAWKINS and Clara Hawkins,
Appellants (Plaintiffs below),

v.

B. F. WALKER, INC., a Delaware Corpora-
tion, Appellee (Defendant below).

No. 3533.

Supreme Court of Wyoming.

April 13, 1967.

Willaim H. Brown, of Brown, Healy,
Drew, Apostolos & Barton, Casper, for ap-
pellants.

Edward E. Murane, of Murane, Bostwick,
McDaniel & Scott, Casper, for appellee.

Before GRAY, McINTYRE, and PARK-
ER, JJ.

Mr. Justice GRAY delivered the opinion
of the court.

Plaintiffs, husband and wife, suffered
rather extensive injuries to their persons
and property as the result of a collision on
a two-lane highway in Wyoming between
their automobile and a tractor-trailer unit
of the defendant and brought action to re-
cover. Trial to a jury resulted in a ver-
dict and judgment nonsuiting the husband
and a verdict and judgment in favor of
the wife and against the defendant in the
sum of $12,000. Claiming that the trial
judge erred to their prejudice in refusing
to allow plaintiffs' to develop all of the
material circumstances surrounding the
taking of a written statement used by de-
fendant's counsel for purposes of impeach-
ment of an important witness of plain-
tiffs—including the fact that it was taken
by an insurance adjuster—and claiming fur-
ther that the damages awarded the wife

were so clearly unreasonable and inadequate as to indicate passion and prejudice on the part of the jury, both plaintiffs have appealed.

The sharp delineation of the questions before us renders it unnecessary extensively to relate the facts disclosed by the record. By way of some orientation it is undisputed that defendant's unit, driven by Ernest Staab, was proceeding easterly upon the highway, transporting a load of pipe to be delivered to a site in the Big Muddy Oil Field, some distance west of the town of Glenrock, Wyoming; that Douglas Johnson—the witness above mentioned—was driving his car in the same direction as defendant's unit at some distance to the rear; that plaintiffs' car, driven by the husband, was also proceeding in the same direction, and behind the Johnson car; and that all three vehicles were traveling in the eastbound lane of the highway when plaintiffs' car pulled over into the westbound lane for the purpose of passing the Johnson car and defendant's unit. In the meantime Staab was preparing to make and started to make a lefthand turn off the highway onto a narrow private road leading into the oil field, and it was during this maneuver that plaintiffs' car collided in the westbound lane with the tractor of defendant's unit.

Other than some further reference to the testimony of plaintiffs' witness Johnson, the foregoing will suffice for purposes here.

While plaintiffs' complaint specifically enumerates the commission of several acts and omissions of duty to sustain their claim of negligence on the part of defendant, the issue relevant to the precise evidentiary question before us is whether or not the driver of the defendant's unit gave adequate notice of his intention to make the left turn by use of his lefthand turn-signal lights located on the left front fender of the tractor and on the rear of the trailer. The testimony pertaining to this issue was much in conflict and it was in this area that the incident relating to the matter of insurance became involved.

On direct examination Johnson had testified that he was probably 250 to 300 feet from defendant's truck and by the time plaintiffs' car passed he was close to the truck "much closer than I had been when I previously looked"; and that he slammed on his brakes, "turned to the right, went around the back of the trailer," and brought his car to a stop immediately south of the turnoff. On cross Johnson estimated that he was 100 to 150 feet from the truck when plaintiffs' car passed him. Thereupon the following occurred:

"Q. I have in mind the time when the Chevrolet, the Hawkins' car, was passing you and you observed to the front, isn't it a fact you made a statement on December 3rd, 1962, 'That when the Chevrolet car started to pass, and the car was almost even with my car, then I noticed the truck was signaling for a left turn.' Did you make that statement? A. I answered questions.

"Q. Did you make that statement? A. No, sir.

"Q. 'At that time I was two hundred or two hundred fifty feet from the truck.' A. No, sir.

"Q. Did you make that statement? A. No, sir."

It will be noticed that plaintiffs' counsel voiced no objection to this line of questioning for lack of foundation. Following this the record discloses that defendant's counsel handed two sheets of paper to the witness and the witness admitted that he had signed the instrument on the second page, which was dated December 3, 1962, at Casper, Wyoming. The written statement contained the language of the question previously put to the witness and his attention was also called to a recital therein that the witness stated he had "stopped about fifty feet short of the impact location," which the witness also denied making.

Then on redirect Johnson testified that the statement was written out by one Don Carpenter. He was then asked, "Did Mr. Carpenter identify his business or the purpose of discussing with you the matter of

a statement?" The witness answered, "Yes" but upon objection by defendant's counsel on the ground of hearsay the witness was not permitted to go further. Plaintiffs' counsel then made an offer of proof in the following language:

> "That Don Carpenter represented to the witness on the stand that he wanted to take a statement on behalf of the liability insurance company which had coverage on the B. F. Walker truck involved in this collision. That's all I offer to prove at this time."

The offer was rejected and in this we are inclined to agree with the trial judge that the offer went beyond permissive limits. However, from what later followed and a further offer of proof, we think it fair to say that primarily plaintiffs' counsel was endeavoring to show that Carpenter had represented himself to be an insurance adjuster and the trial judge took the view that this was a matter which could not be brought out as a part of the surrounding circumstances.

We have not heretofore been confronted with this precise question. Nevertheless, the view of this court generally with respect to injecting the matter of liability insurance into the trial of a negligence case was well expressed in Eagan v. O'Malley, 45 Wyo. 505, 21 P.2d 821, 822, by this language:

> " * * * The rule should be, as we think, that when counsel's conduct and his questions in the case are fairly conducive to the accomplishment of a legitimate end in the proceedings, if, incidentally, prejudice results therefrom to the adverse party, it may not be avoided. When, however, his conduct and inquiries pass the bounds of serving that legitimate purpose, it should then be the duty of the trial court to interfere and, if that is not done, the matter should be appropriately dealt with on review. * * *"

It was also mentioned that the trial court was vested with a wide discretion in guarding against any untoward happening in this regard that might well result in an unfair trial to either of the parties. The incident here is well within the scope of the rule. Mart v. Riley, 239 Cal.App.2d 649, 49 Cal. Rptr. 6, 12; Mahowald v. Garrison, Mo. App., 397 S.W.2d 713, 717; Turner v. Caldwell, Mo.App., 349 S.W.2d 493, 497. Simply stated then, the problem is whether or not under the circumstances of this case the trial judge abused his discretion in refusing to permit plaintiffs to show that Don Carpenter was an insurance adjuster. To answer we must first pursue the basic element of whether or not plaintiffs' purpose was "fairly conducive to the accomplishment of a legitimate end." Eagan v. O'Malley, supra. We think it was.

The great weight of authority is to the effect that the scrivener of a written statement taken by him from a party or one of his witnesses and used for purposes of impeachment may not remain anonymous and unidentified in name or occupation even though it may be brought out that the scrivener is in some way connected with an indemnity insurance company. Mart v. Riley, supra; Pinkerton v. Oak Park National Bank, 16 Ill.App.2d 91, 147 N.E.2d 390, 397; Turner v. Caldwell, supra, 349 S.W.2d at 499; Gleason v. Baack, 137 Neb. 272, 289 N.W. 349, 355; Fleischman v. City of Reading, 388 Pa. 183, 130 A.2d 429, 433; Stygles v. Ellis, 80 S.D. 346, 123 N.W.2d 348, 353-354; 98 C.J.S. Witnesses § 422, p. 232. The reasonableness of the rule is apparent. It affords to the trier of the facts an opportunity more informatively to weigh the testimony of the witness against the recitals of the scrivener. Consequently, counsel desiring to use such a statement will be well advised carefully to consider what he may invite and should he nevertheless proceed he will be held to have taken a calculated risk.

Some of the cases undertake to determine the question of whether or not such fact was brought out intentionally or inadvertently. We fail to see the logic of that test but we would nevertheless caution of the danger that lurks in protracted and overly emphatic use of the indication that

liability insurance may be involved. We recognize, of course, that avoidance of any such abuse places a rather exacting burden upon the trial judge but his right initially and promptly to interfere with the excessive zeal of an advocate in this respect is unquestioned.

In the light of the above, can we now say that the trial judge abused his discretion in the ruling made? We are not fully persuaded that the question must be answered in the affirmative. It occurs to us that plaintiffs' counsel, no doubt as a part of his trial strategy, was not entirely blameless for the ruling. As stated above, the impeachment question first put to Johnson did not disclose to the court, so far as the record shows, whether the statement was oral or written and other than fixing the date no effort was made to lay a foundation for the impeaching statement.

■ What is or what is not a proper foundation is somewhat dependent upon the circumstances present, but the generally prevailing foundation formula of "when-where-to whom" is imposed, whether the impeaching statement was made orally or reduced to writing. Elliott v. Black River Electric Cooperative, 233 S.C. 233, 104 S.E. 2d 357, 371, 74 A.L.R.2d 907; Liberty National Life Insurance Company v. Harrison, 274 Ala. 43, 145 So.2d 219, 223; Maestas v. Christmas, 63 N.M. 447, 321 P.2d 631, 635; 4 Jones on Evidence, § 933, p. 1754 (1958); 98 C.J.S. Witnesses § 605(b), p. 607. Consequently, the initial question put to the witness was improper and we cannot believe that the trial judge in the face of a proper objection would have permitted use of the statement without further foundation. Had that been done at the outset it is entirely possible that the matter might not have been further pursued by defendant's counsel and the incident might not have occurred.

■ Then, in addition to the foregoing, there is the further circumstance that immediately following the cross-examination of Johnson and prior to the questioned ruling of the trial judge plaintiffs had the written statement marked as an exhibit and offered it into evidence without limitation. The exhibit was received and read to the jury over the objection of defendant. Ordinarily in that situation plaintiffs would have been held to have vouched for the accuracy of the statement and to have been bound by it, Ballard v. Aetna Casualty and Surety Company, Tex.Civ.App., 391 S.W.2d 510, 513, r. n. r. e.; 29 Am.Jur.2d, Evidence, § 840, p. 931; but plaintiffs were not held to that rule. In keeping with the trial court's expressed view that plaintiffs would be afforded every opportunity to develop all of the surrounding circumstances except those relating to the occupation of Carpenter, the plaintiffs were permitted to bring out further claimed inaccuracies and also to show that Johnson, because of the exigency of time and difficulty with Carpenter's handwriting, did not read the statement before signing it. Thus, so far as the jury was concerned, it would be speculative to say that the members were misled as to the purposes for which the defendant had caused the statement to be taken, and as the matter stood at the time the case went to the jury Johnson's denials of the crucial statements therein contained stood unchallenged.

■ Under the circumstances we are inclined to the view that Carpenter's occupation was not as critical to a fair evaluation of Johnson's testimony as plaintiffs' counsel would have us believe. All things considered, we think the trial court judge was in better position to determine the matter in keeping with the rationale of Eagan v. O'Malley, supra, than is this court.

■ Neither do we find merit in plaintiffs' contention that the verdict awarded plaintiff-wife was so inadequate as to disclose passion and prejudice on the part of the jury. The only tangible criteria we have of measuring the award is the medical expense of some $5,700. The remaining portion of her total claim of $45,000 was made up of contemplated future medical expenses, loss of earning capacity, and past and future pain and suffering. While we

would agree that there was evidence which might have warranted a more substantial award by the jury, such matters necessarily are entrusted to the jury and we have failed to discover any sound reason for interfering with the jury's determination. McPike v. Scheuerman, Wyo., 398 P.2d 71, 74; Valdez v. Glenn, 79 Wyo. 53, 330 P.2d 309, 312, rehearing denied 332 P.2d 1119.

Affirmed.

HARNSBERGER, C. J., not participating.