This is a child custody case.
A psychiatrist, who had practiced his medical specialty for over four years, hospitalized the mother and conducted a sodium amytal interview with her. He testified as follows:
 "Sodium amytal is a chemical substance, the vernacular of which some people call `truth serum,' and I'll put that in quotes. The purpose of using it is to induce a state of relaxation much like hypnosis, under which the subject, when questioned, is in effect, without the — what we call the preconscious censor — in other words, the inhibitions about things, such as telling the truth and remembering things way back, even into childhood or while under stress. The mind often disassociates — The mind often will disassociate and will block out certain events that happen, when under stress or — well, particularly under stress. And, under the influence of this medication, it's been rather conclusively shown for at least fifty years now that the medication removes those inhibitions and allows the person to speak freely, without those inhibitions standing in the way."
He specifically questioned the mother while she was under the influence of that drug as to whether she had any knowledge of any immoral or illicit, overt or covert, sexual acts performed, or not performed, upon her two young daughters with the mother being a witness thereto. After the trial court overruled the father's apt specific objections thereto, the physician was permitted by the trial court to testify that, based upon the test results, it was his opinion that the mother had no knowledge or recollection of any sexual acts being performed upon her daughters either by her or by anyone else and that, in his opinion, the mother was telling him the truth during the entire questioning.
On cross-examination by the father's attorney, the witness testified that the test which he conducted is not a foolproof test, that he does not know the general success rate of obtaining the truth from persons who are under the influence of that drug, that he cannot give any percentage as to reliability of the test since there have been no controlled studies on the use of sodium amytal, but, from his personal experience, it is a reliable test since he has had a success rate of at least ninety percent in its use.
After the trial court left the custody of the children with the mother, the father appealed. He contends that the trial court erred in allowing the psychiatrist to give his opinion that the mother had no knowledge of any sexual abuse of her children, such opinion being based upon his examination of the mother under sodium amytal.
In Flurry v. State, 52 Ala. App. 64, 289 So.2d 632
(Ala.Crim.App.), cert. denied, 292 Ala. 720, 289 So.2d 644
(1974), it was first determined in this state that the results of a polygraph examination are not admissible into evidence. Truth serum tests occupy much the same position as lie detector tests, and courts do not recognize the admissibility of the results of such tests for the purpose of proving the truth of the matter asserted. 29 Am.Jur.2d Evidence § 831 (1967); S. Gard, 2 Jones on Evidence, § 14.48 (6th ed. 1972). In Flurry, the American Jurisprudence summary as to truth serum tests was quoted with approval.
There is no doubt that the results of the truth serum test were offered for the purpose of proving that the mother lacked such knowledge in the present case. The trial court erred in allowing such proof over the father's objections.
 "It has long been the rule that where a cause is tried by the court without a jury, the admission of illegal evidence raises the presumption of injury, and requires the reversal of the judgment unless the remaining evidence is without conflict and is sufficient to support the judgment."
Liberty National Life Insurance Co. v. Harrison, 274 Ala. 43,145 So.2d 219 (1962). That rule was recently quoted and reaffirmed. McDuffie v. First National *Page 971 Bank of Tuskaloosa, 450 So.2d 451 (Ala. 1984).
We have carefully searched the record. While the remaining evidence in the case before us is sufficient to support the final judgment of the trial court, there is a conflict in that remaining evidence as to whether the mother had, or did not have, such knowledge. Therefore, we are required to reverse this case.
Since the remaining evidence would justify an award of the custody of the children to either of the parents, we remand this case to the learned trial court. The October 9, 1985 final judgment in this cause shall be set aside and a judgment as to custody and other related matters shall be rendered and entered after a consideration of all of the competent evidence which was taken before the trial court concerning this present litigation. However, the testimony of the psychiatrist shall not be considered in making such custody award.
REVERSED AND REMANDED.
All the Judges concur.