Lyle Lavern SIMS, Appellant
(Defendant below),

v.

The STATE of Wyoming, Appellee
(Plaintiff below).

No. 4362.

Supreme Court of Wyoming.

Jan. 17, 1975.

Robert J. Stephens, Jr., Billings, Mont., William Norman, Gillette, and Alan B. Johnson, Cheyenne, for appellant.

David B. Kennedy, Atty. Gen., Jerome F. Statkus, Asst. Atty. Gen., Cheyenne, and Daniel J. Morgan, County and Pros. Atty., Gillette, for appellee.

Before McEWAN, GUTHRIE, McCLINTOCK and RAPER, JJ., and J. REUEL ARMSTRONG, District Judge.

RAPER, Justice.

The appellant-defendant was found guilty by a jury and sentenced to the Wyoming State Penitentiary for the crime of unlawful possession with intent to deliver a controlled substance, lysergic·acid diethylamide, commonly known as LSD, in violation of § 35–347.31, W.S.1957, 1973 Cum. Supp. He asks three questions in this appeal:

1. Did the trial court improperly limit defense counsel's cross-examination of the State's principal witness relating to prior inconsistent statements made by the witness under oath?

2. Did the trial court err in failing to grant a continuance on the basis of surprise when the State's principal witness testified at variance with prior sworn affidavits, upon which defense counsel has relied and thereby denied the defendant of effective assistance of counsel?

3. May "intent to deliver" as an essential part of the alleged crime be inferred from the evidence adduced at trial, without benefit by the jury of any specific instructions on the intent?

To support a search warrant of a trailerhouse occupied by defendant and another by the name of Strait, witness Schwartz on May 14, 1973, made an affidavit in which he narrated the circumstances of his buy of LSD, upon which this prosecution is based. Later, on May 19, 1973, Schwartz made another affidavit for the purpose of supporting a criminal complaint for arrest warrant, to show probable cause. On May 18, 1973, Strait made an affidavit implicating himself and the defendant as financial partners in the drug sale and stated that the money was to be divided between them. The May 19 affidavit of Schwartz and the May 18 affidavit of Strait were attached to the complaint and together constituted probable cause for the issuance of a warrant for the arrest of defendant.

At the trial of the case, Schwartz testified that when he went to the trailerhouse occupied by the defendant and Strait, Strait went to a refrigerator and brought out a baggie full of LSD tablets, sold $20 worth to Schwartz, after which Strait sat down at a table and handed to the defendant $10, Strait keeping $10. In neither of

Schwartz's May 14 or May 19 affidavits, had he made any mention whatsoever of any transfer of funds from Strait to the defendant, of the money paid him by the witness.

Defense counsel attempted a cross-examination of Schwartz with respect to the sworn statements. It must be kept in mind that neither of the statements were in evidence nor were marked for identification, but they did appear in the court file, being a part of the transcript filed by the justice of the peace with the district court. Without laying any foundation, defense counsel jumped into inquiring about the contents of the May 14 affidavit and an objection that no proper foundation had been laid was made and sustained, so defense counsel proceeded to ask some foundation questions, without inquiring into the circumstances under which the affidavit was made and, again, the court sustained an objection that there was no proper foundation, but nevertheless the witness, after the objection was sustained, answered a question that indicated that he had not in the May 14 affidavit stated that the defendant had participated in the money which he had paid to Schwartz. The answer was not stricken so it was before the jury.

The defendant's counsel then started to inquire about another affidavit (probably the May 19 affidavit). The court at this point stated, in effect, to defense counsel that he did not know what these affidavits were, and foundation must be laid and that he could proceed with cross-examination. Defense counsel still failed to lay any foundation and started to examine about the contents of the prior affidavits, to which an objection was sustained. Defense counsel thereupon abandoned any further inquiry about the affidavits.

The court has gone into some detail in regard to these circumstances, in order to make meaningful the governing rules and the importance of proper foundation in the impeachment of a witness. There is a regular, established and accepted procedure

for impeachment with a previously made statement either in direct contradiction or in those situations where there is no patent contradiction, but an important fact is not mentioned and we shall approach these considerations in that order.

 The technique of laying the foundation in such case is very nicely outlined in McCormick et al. on Evidence, 2d Ed. H.B., p. 72:

"To satisfy the requirement the cross-examiner will ask the witness whether he made the alleged statement, giving its substance, and naming the time, the place, and the person to whom made. The purpose of this particularity is, of course, to refresh the memory of the witness as to the supposed statement by reminding him of the accompanying circumstances."

McCormick also says on the same page:

"The purposes of the requirement are (1) to avoid unfair surprise to the adversary, (2) to save time, as an admission by the witness may make the extrinsic proof unnecessary, and (3) to give the witness, in fairness to him, a chance to explain the discrepancy."

This is not a new rule in Wyoming, being first mentioned in Dayton v. The Wyoming National Bank, 1875, 1 Wyo. 263, 266, the court saying:

"It is simple justice to the witness. If his mind is directed to the particular circumstances and occasion, he may not only recollect but satisfactorily explain his previous and apparently contradictory statements. In this case the foundation was not laid to impeach the testimony of the said Irvinson, and the court properly ruled out the affidavit: (authority cited)."

See also Hawkins v. B. F. Walker, Wyo. 1967, 426 P.2d 427, 430, and Mares v. State, Wyo.1972, 500 P.2d 530, 536. This fundamental is even statutory in this state, § 1–143, W.S.1957, where it is declared that a witness may be impeached by state-

ments inconsistent with his present testimony,

> " * * * but * * * the circumstances of the supposed statement sufficient to designate the particular occasion, as near as may be, must be mentioned to the witness, and he must be asked whether or not he has made such statements, and, if so, allowed to explain them."

Actually, the witness' testimony was not in direct conflict with his previous affidavits because in the affidavits there had been no mention of any payment by Strait to the defendant in the presence of the witness Schwartz, so what exists is an omission to state matters in an earlier affidavit, rather than a direct contradiction between testimony at the trial and the previous statement. However, this is considered as a contradiction under some circumstances, which ought to be explained in order to make clear the applicability of the foundation requirements.

■ The general rule is that a witness who has testified to certain matter cannot be impeached by showing his omission to disclose it on an occasion not calling for such disclosure; but the omission of a witness to state a particular fact, under circumstances rendering it incumbent upon him to state it, or natural for him to do so, may be shown to discredit his testimony as to such fact. 98 C.J.S. Witnesses § 586, p. 563.

In Ball v. State, 43 Ariz. 556, 559, 33 P.2d 601, 602, the court appropriately said:

> " * * * It is always competent to show that a witness has upon a former occasion omitted to state material and relevant facts which he now states, providing it was under the circumstances his duty to speak the whole truth. * * * It would seem that, if the effort was to show that the witness had omitted something at the preliminary, it must have been something concerning which he was questioned or to which his attention was called. If such a showing

had been made, we have no doubt the trial court would have required the witness to answer. A witness is ordinarily not supposed to know just what facts he should relate and, if not asked, may frequently omit material and relevant facts."

Wigmore says:

> "A failure to assert a fact, when it would have been natural to assert it, amounts in effect to assertion of the non-existence of the fact. * * * The underlying test is, would it have been natural for the person to make the assertion in question?" 3A Wigmore, Evidence, p. 1056, § 1042 (Chadbourn rev. 1970).

The rule is stated another way in Carroll v. Krause, 295 Ill.App. 552, 562, 15 N.E.2d 323, 328:

> " * * * the omission of a witness to state a particular fact under circumstances rendering it incumbent upon him to, or likely that he would, state such a fact, if true, may be shown to discredit his testimony as to such fact."

The court, in Asato v. Furtado, 52 Haw. 284, 474 P.2d 288, 292, explains the rule in the following well-stated language,

> "Whether an omission to state previously a fact now asserted constitutes an inconsistency, sufficient to allow the previous statement to be shown, depends upon the circumstances under which the prior statement was made. Not every omission will constitute such an inconsistency. But where the prior circumstances were such that the speaker could have been expected to state the omitted fact, either because he was asked specifically about it, or because he was purporting to render a full and complete account of the transaction or occurrence, and the omitted fact was an important and material one, so that it would have been natural to state it, the omission gives rise to a justiciable inference that the omitted fact was omitted because it did not exist."

With the foregoing in mind, would it have been expected of Schwartz that in his affidavit in support of a search warrant, he make mention of the fact that there was a transfer of money between Strait and Sims? In the case of a search warrant, the primary objective is to seize evidence. There is no indication anywhere in the record that the affidavit of May 14, 1973, was made for any other purpose. This was not an affidavit made for the purpose of proving the defendant's involvement. The May 14 affidavit situation is different than that appearing in State v. Blackwell, 49 N.J.Super. 451, 140 A. 2d 226, where a detective signed a written return of a search warrant reporting that he had confiscated from a defendant a certain sum in cash and did not mention an "account sheet" constituting a record of bets taken by the defendant. The court declared that it would have been natural, as a matter of fact required, that the detective make a report of everything seized by virtue of the search warrant. On the other hand, it may have been the natural thing to do, for witness Schwartz to make mention of the transfer of money from Strait to defendant, in the May 19 affidavit, because it was used to support the issuance of a warrant for the arrest of the defendant. The circumstances under which the affidavits were made are a part of the required foundation.

 But these are questions for a jury and they were not present because of failure to lay foundation for its consideration. The answers of the witness could well have been adverse to the defendant. We could also improperly guess that Strait's payment to defendant of a half of the proceeds from the sale, as testified to by Schwartz, was only a recently contrived bit of evidence to close an evidentiary gap because without Schwartz's testimony, the State would have failed to make a case; it was a pivotal point. The witness Strait refused to testify at the trial that there was an agreement between him and the defendant to split the proceeds, though he previously made an affidavit in support of the State's complaint to that effect. Strait was not impeached by his previous contradictory statement for reasons unknown. This court must take the record as it is, not how it might have been; nor can we substitute ourselves for the jury. The trial judge gave an opportunity to lay foundation, but the defendant failed to do so. He can hardly now claim this as error. Rules of evidence apply to a defendant as well as the State.

This was an extremely simple case, requiring only a half a day to select the jury and to present the evidence. At the end of the State's evidence, at 11:15 in the morning, the defendant asked for a continuance until 1:00 p. m., the same day, to go out and gather up a couple of witnesses he had not planned on using or perhaps even thought about until Schwartz testified about the transfer of money from Strait to the defendant, thus creating a conflict between the testimony of Strait and Schwartz. The defendant claimed he was surprised in that he was relying on the affidavits of Schwartz and that he knew as a result of an interview with Strait that he was not going to testify that there was any agreement to split the proceeds of the sale. Defendant's counsel explained that the defendant's brother was out looking for witnesses at the time. In any event, the witnesses had apparently not been found by 1:00 in the afternoon, or the defense counsel would have asked for a reopening of the case, upon reconvening of court. The defendant had no other witnesses at this point and the court was advised defendant had decided not to testify. The court denied the continuance. At 11:30 a. m., the court was reconvened and the defendant rested. The jury was excused until 1:00 p. m., while the court and counsel conferred and prepared instructions. At 1:00 p. m., the court reconvened, instructions were read and the case went to the jury.

The defendant did not file a motion for a new trial. Pursuant to Rule 34, W.R.

Cr.P., "The court on motion of defendant may grant a new trial to him if required in the interests of justice. * * *" The record remains empty of any indication that there were particular witnesses with material testimony. In the absence of some proper showing that the witnesses would have testified and rebutted Schwartz's testimony, we would have to speculate as to whether they would have testified and what their testimony would have been. This we cannot do.

■ The court disagrees with the State in its assertion that the defendant was required to apply for a continuance in accordance with the requirements of § 1–68, W.S.1957, which states:

"A motion to postpone the trial of a case in any of the courts of this state, on account of the absence of evidence, can be made only upon affidavit showing the materiality of the evidence expected to be obtained, and that due diligence has been used to obtain it, and where the evidence may be; and, if it is for an absent witness, the affidavit must show where the witness resides, if his residence is known to affiant, and the probabilities of procuring his testimony within a reasonable time, and that his absence has not been procured by the act or connivance of the party, nor by others at his request, nor with his knowledge or consent, and what facts he believes the witness will prove, and that he believes them to be true, and that he is unable to prove such facts by any other witness whose testimony can be as readily procured. * * *"

That section, by its very language, applies to motions for continuance made before trial.

■ Ungar v. Sarafite, 376 U.S. 575, 589, 84 S.Ct. 841, 849, 11 L.Ed.2d 921, 931, reh. den. 377 U.S. 925, 84 S.Ct. 1218, 12 L.Ed.2d 217, is in point, when the court says:

"The matter of continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process * * *. There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied."

As explained in Ungar, note 9, the requirements of due process include the right to be adequately advised of charges, a reasonable opportunity to meet the charges by way of defense or mitigation, representation by counsel and an adequate opportunity to call witnesses.

■ Where a party seeks a continuance due to the absence of a witness, there must be a showing that the witness' testimony would be material were he allowed to testify, and that the moving party has used due diligence to procure the attendance of the witness. Dykeman v. Ashton, 8 Ariz. App. 327, 446 P.2d 26, 29. In that case, the net delay would have been approximately one hour.

■ In Wyoming it is likewise the well-known rule that the granting or refusal of a request for continuance of a trial of a case is ordinarily a matter within the sound discretion of the trial court under the circumstances of each case. The point has been before the Wyoming Supreme Court. Glover v. Berger, 1953, 72 Wyo. 221, 263 P.2d 498; Lampitt v. State, 1925, 34 Wyo. 247, 242 P. 812, and the cases therein cited. In the light of this popular and universal rule, we can find no reason to see that the trial judge abused his discretion in denying a continuance under the circumstances here disclosed. The defendant failed to make an adequate offer of proof to justify a continuance and had every benefit of due process.

■ With regard to the defendant's last assignment of error, namely, that there should have been some sort of an instruction on intent, it should be first noticed, that the defendant objected to no instructions given and offered no instructions to the court of any kind pertaining to any

subject, that were refused. It is basic that such objections be made. Rule 31, W.R. Cr.P.; Hays v. State, Wyo.1974, 522 P.2d 1004. Failure to give an offered instruction must also be objected to, but here that point can't even be injected because no instruction along the lines suggested by the appellant was offered.

It was made clear by at least three of the instructions given by the court that intent to deliver LSD, a controlled substance, was a necessary ingredient of the offense and a material allegation that must be proved, in addition to possession. Intent has a common everyday meaning and people commonly practice its use, such as "I intended to do this" or "I intended to do that." The term "delivery" is another word in common use and its everyday, ordinary meaning is practiced by people on frequent occasions, in the delivery of mail, the delivery of packages, the delivery of merchandise and, in this case, the delivery of controlled drugs. There is no technical definition necessary under the circumstances of this case. It would have added nothing to tell the jury that intent is a state of mind. It is doubtful that any juror could claim he did not know that.

In Murdock v. State, Wyo.1960, 351 P.2d 674, 682, the defendant complained about an instruction on intent having been given. The court stated that the intent instruction was not essential in the case, but was not prejudicial. The instruction given was a variation of the correct statement of the law voiced in that case,

"It is a general rule applicable in all criminal cases, including those in which a specific intent is an element of the crime, that the accused is presumed to intend the necessary or the natural and probable consequences of his unlawful voluntary acts."

Defendants in criminal cases do not care for it, but most intent instructions are directed toward an understanding of what proof beyond a reasonable doubt is necessary and assisting the State in this overwhelming burden, such as, for a further example, the instruction that intent is proven through the acts and words of a person and is seldom, if ever, capable of being shown by direct proof. The defendant has not even here demonstrated what specific instruction should have been given, but has spoken in generalities of sound but inapplicable principles.

There was no prejudicial error.

Affirmed.