Gary WILLIAMS, Appellant (Defendant),

v.

The STATE of Wyoming, Appellee (Plaintiff).

No. 5738.

Supreme Court of Wyoming.

Dec. 17, 1982.

Sylvia Lee Hackl, Wyoming Public Defender Program, Cheyenne, for appellant.

Steven F. Freudenthal, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., Allen C. Johnson, Senior Asst. Atty. Gen., and Roger Fransen, Legal Intern, Cheyenne, signed the brief for appellee, with Roger Fransen appearing at oral argument.

Before ROSE, C.J., and RAPER, THOMAS, ROONEY and BROWN, JJ.

BROWN, Justice.

Appellant was convicted of robbery and conspiracy in violation of §§ 6–4–401 and 6–1–203, W.S.1977. Appellant contends that he was denied his constitutional right to represent himself. He also contends that the trial court erred in refusing to hold a hearing during which he could attack the sufficiency of the affidavit supporting a search warrant.

We affirm.

I

The United States Supreme Court has ruled that the Sixth Amendment to the United States Constitution requires that a defendant in state court shall have the right to represent himself. *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). Article 1, § 10 of the Wyoming Constitution says: "In all criminal prosecutions the accused shall have the right to defend in person and by counsel * * *."

In this case, appellant first asserted his right to represent himself at his initial appearance on January 18, 1982. The record reveals that the county court judge appointed the public defender's office to represent the appellant, and that the judge told the appellant it would be the appellant's choice whether or not to consult with that attorney. Appellant did consult with an attorney from the public defender's office. The attorney filed at least eight motions before trial, represented the appellant at the preliminary hearing and at the arraignment, and represented appellant at four motion hearings before trial.

At oral argument, counsel for appellant admitted that appellant had probably waived his first assertion of his right to self-representation by his consultation with and continued use of counsel from at least January 26, the date of his preliminary hearing, until April 9, 1982, the date of the last pretrial motion hearing.

*Faretta,* supra, did not address the question of how a waiver of right to self-representation is to be measured. Generally, the requirement of a knowing and intelligent waiver has been applied only to those rights which the constitution guarantees to a criminal defendant to preserve a fair trial. *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). The right to self-representation is not one of those rights. The Court in *Faretta* recognized that the right to proceed pro se, unlike other constitutional guarantees, has as its primary purpose the defendant's freedom of choice, even though such a choice may operate to his detriment. Other cases have held, both before and after *Faretta,* that the relinquishment of the right of self-representation need not come about through a process measured by the waiver standard applicable to the waiver of right to counsel:

"* * * It is not enough to say that both the right to counsel and the right of

self-representation are constitutional rights, and that both arise from the Sixth Amendment. Rather the standards for establishing the relinquishment of constitutional rights vary with the nature of the right under consideration, and the interests protected by the rights. * * * "We thus do not think that a knowing, voluntary, and intelligent waiver of the right of self-representation is constitutionally mandated. Accord, *United States v. White* (1970), 139 U.S.App.D.C. 32, 429 F.2d 711, 712; *United States ex rel. Maldonado v. Denno,* supra, 348 F.2d [12] at 16; *United States ex rel. Soto v. United States* (3d Cir.1974), 504 F.2d 1339, 1344 n. 16; *Tuckson v. United States* (D.C. [App.] 1976), 364 A.2d 138, 140; *People v. Salazar* (1977), 74 Cal. App.3d 875, 888, 141 Cal.Rptr. 753, 761; *State v. Smith* (Iowa 1974), 215 N.W.2d 225, 226; *People v. McIntyre* (1974), 36 N.Y.2d 10, 17, 364 N.Y.S.2d 837, 844, 324 N.E.2d 322, 327 * * *." *Russell v. State,* 177 Ind.App. 138, 383 N.E.2d 309, 312–313 (1978).

■ A defendant can waive his right to self-representation through his actions. *United States v. Evans,* 542 F.2d 805 (10th Cir.1976). The appellant here did waive his first assertion of his right to self-representation by his continued use of counsel. Appellant next asserted his right to represent himself on Friday, April 9, 1982. Trial was scheduled to commence on Monday, April 12, 1982. Appellant's final assertion for self-representation was made the morning of trial before the jury was empaneled.

The Court in *Faretta* set out some procedural rules to apply when a defendant expresses a desire to represent himself. The Court then stated that a defendant has to unequivocally assert the right to proceed pro se. It reserved to the trial court the option of appointing standby counsel and the option of terminating the defendant's self-representation should the defendant become disruptive during trial. Since the assertion of the right to represent oneself is in effect a waiver of the benefits of the Sixth Amendment right to counsel, the

Court ruled that in asserting the right to represent himself, "the accused must 'knowingly and intelligently' forgo those relinquished benefits," citing *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). The Court in *Faretta* also ruled that technical legal knowledge is not relevant to assessment of a defendant's knowing exercise of the right to defend himself.

According to appellant, the crux of his argument here is that the trial court failed to conduct a proper inquiry to determine if appellant was capable of representing himself, and that the reasons the trial court gave for denying appellant his right to self-representation were not proper under *Faretta.* The record shows that the trial court based its denial of the request on appellant's lack of technical legal knowledge, which is an incorrect criterion under Faretta. At the hearing on April 12, the trial court stated:

> "THE COURT: * * * I would have some question whether or not the defendant would be able to conduct voir dire examination in his own behalf today. For example, Mr. Williams, are you aware of how many peremptory challenges you have?
>
> "MR. WILLIAMS: If I'm correct, I have six, but still nonetheless—
>
> "THE COURT: Do you know what the bases for challenging people in Wyoming for cause are?"

The court also said it was interested in appellant's background in the law.

At the hearing on April 9, 1982, however, the trial court indicated that appellant's request to represent himself was untimely.

> "THE COURT: * * * Mr. Tristani has represented him on up until this day, and [it] is simply too late—
>
> "THE DEFENDANT: I didn't ask for him. I requested at the arraignment hearings [initial appearance] if you would take note, that I'll represent myself, and that was turned down. And all the other Motions that you're turning down, I'm just requesting a hearing for them. * * * "

*Faretta* left many important procedural questions, including the question of timeliness of a request to proceed pro se, unanswered:

" * * * Must every defendant be advised of his right to proceed pro se? If so, when must that notice be given? Since the right to assistance of counsel and the right to self-representation are mutually exclusive, how is the waiver of each right to be measured? * * * How soon in the criminal proceeding must a defendant decide between proceeding by counsel or pro se? * * * " *Faretta v. California,* supra, Justice Blackmun dissenting, 422 U.S. 806, 852, 95 S.Ct. 2525, 2549, 45 L.Ed. 2d 562, 591.

Other courts have addressed these questions, and have set up certain additional procedural requirements which seem to be generally accepted, in various forms, by many other courts: (1) the accused must be the one to initially request the right; (2) the demand must be timely; and (3) the request to represent oneself must not be used as a delaying tactic.

■ We hold that these additional procedural requirements are appropriate when a defendant wants to exercise his right to self-representation. We further hold that when a defendant fails to make a timely request to proceed pro se, the trial court has discretion in deciding whether to allow appellant the exercise of the right. This allowance of discretion is based on the rationale that the State has an interest in avoiding disruptions and delays which could occur if an untimely request to proceed pro se is granted. *People v. Hall,* 87 Cal.App.3d 125, 150 Cal.Rptr. 628 (1978); *Hamiel v. State,* 92 Wisc.2d 656, 285 N.W.2d 639 (1979); *Russell v. State,* supra.

*State v. Fritz,* 21 Wash.App. 354, 585 P.2d 173, 178 (1978), set out rules concerning whether a defendant's request to proceed pro se can be a matter within the trial court's discretion:

"The cases * * * have generally held: (a) if made well before the trial or hearing and unaccompanied by a motion for continuance, the right of self-representation exists as a matter of law; (b) if made as the trial or hearing is about to commence, or shortly before, the existence of the right depends on the facts of the particular case with a measure of discretion reposing in the trial court in the matter; and (c) if made during the trial or hearing, the right to proceed pro se rests largely in the informed discretion of the trial court."

■ The request for self-representation which appellant made on a Friday preceding the Monday the trial was to start, was a request we deem as not being made within a reasonable time. Because of the intervention of the weekend, appellant's request was in effect made the day before the trial was to begin. In *People v. Windham,* 19 Cal.3d 121, 137 Cal.Rptr. 8, 560 P.2d 1187 (1977), the defendant during trial made a motion for self-representation. In footnote 5 to that opinion, the California Supreme Court discussed the eventuality of a request being made shortly before trial. Although it was speaking to a midtrial request, it indicated in the footnote that a request for self-representation the day preceding trial would be an untimely request.

"Our imposition of a 'reasonable time' requirement should not be, and, indeed must not be used as a means of limiting a defendant's constitutional right of self-representation. We intend only that a defendant should not be allowed to misuse the *Faretta* mandate as a means to unjustifiably delay a scheduled trial or to obstruct the orderly administration of justice. For example, a defendant should not be permitted to wait until the day preceding trial before he moves to represent himself and requests a continuance in order to prepare for trial without some showing of reasonable cause for the lateness of the request. In such a case the motion for self-representation is addressed to the sound discretion of the trial court * * * ." *People v. Windham,* supra, 137 Cal.Rptr. at 12, 560 P.2d at 1191.

The court went on to set out factors which should be considered by a trial court

when confronted with an untimely request for self-representation.

" * * * [T]he trial court shall inquire sua sponte into the special factors underlying the request thereby ensuring a meaningful record in the event that appellate review is later required. Among other factors to be considered by the court in assessing such requests * * * are the quality of counsel's representation. of the defendant, the defendant's prior proclivity to substitute counsel, the reasons for the request, the length and stage of the proceedings, and the disruption and delay which might reasonably be expected to follow the granting of such a motion. Having established a record based on such relevant considerations, the court should then exercise its discretion and rule on the defendant's request." Id., 137 Cal.Rptr. at 12–13, 560 P.2d at 1191–1192.

■ The record shows that the trial court here considered other factors set out above. The court pointed out that in its opinion the appointed attorney possessed the required professional skill and judgment to render technical and professional decisions in behalf of his client, thus indicating that he considered the quality of counsel's representation of appellant.

The record also indicates that the trial court considered the length and stage of the proceedings and the disruption and delay which might reasonably be expected to follow the granting of such a motion.

"MR. WILLIAMS: I should advise you to see the *Faretta* case.

"THE COURT: Sure. I'm aware of your allegation in that regard, but nothing has been brought to my attention until Friday as to that matter, and for four months you have worked with Mr. Tristani in this case."

Appellant coupled his request to defend himself with a request for a 60-day continuance. We note that he was being tried jointly with another defendant, and that the granting of appellant's motion would have resulted in either the other defendant's trial being delayed or in having two separate trials, creating further disruption of the judicial process.

Under the facts of this case, we hold that the trial court was entitled to exercise its discretion in deciding whether to allow appellant's untimely request to proceed pro se, and that it did not abuse its discretion in denying the request.

## II

■ Appellant's second argument is that the trial court erred when it refused to hold a hearing so that appellant could attack the sufficiency of the affidavit supporting the search warrant.

Both sides agree that *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), controls. That case said an accused was entitled in certain instances to an evidentiary hearing to question the truthfulness of an affidavit in support of a warrant.

" * * * [W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. * * * " Id., 438 U.S. at 155–156, 98 S.Ct. at 2676, 57 L.Ed.2d at 672.

It is clear that before a hearing is required, the appellant has to make a substantial preliminary showing of knowing or reckless misrepresentation, and the appellant has to show that the allegedly false statement was necessary to the finding of probable cause. The trial court ruled that no hearing was required because there was no misrepresentation, and because the portion of the affidavit to which appellant objected was not necessary to find probable cause.

During a hearing on February 22 and 23, 1982, appellant moved to suppress certain items of physical evidence on the grounds that the search warrant itself was insufficient and on the grounds that the affidavit

in support of the warrant was defective because it contained misrepresentations. The affidavit, which was sworn to by a Laramie County deputy sheriff, said in pertinent part:

"3. The employees of the Wyoming State Bank confirmed, to Laramie County Sheriff Dennis S. Flynn at approximately 1645 hours (4:45 p.m.) 15 January 1982, that the Wyoming State Bank had been the victim of an armed robbery by two persons, described as wearing blue knit masks, blue jeans; with one subject in a grey or blue-grey ski jacket, and the second wearing a shirt over other clothing.

"4. Bennett L. Allen * * * a witness to the events described in paragraph 3 above, stated that he was forced to lie on the floor of the bank, while the two individuals successfully robbed two of the teller positions. Said Bennett L. Allen described the vehicle, *in which these said individuals fled,* as a blue American Motors product, bearing California license plates." (Emphasis added.)

Appellant objected to the words "in which these said individuals fled." To support his contention that the affidavit contained misstatements, and that therefore the trial court should hold an evidentiary hearing, appellant introduced Mr. Allen's written statement which he had given to the police. Appellant argued that Mr. Allen's statement did not correspond with the statements which the deputy sheriff in his affidavit attributed to Mr. Allen. Part of Mr. Allen's statement said that on the day of the robbery, he went to the bank, saw what he thought was an Eagle car, perhaps with the engine running, outside the bank. The car had California license plates. The statement then detailed Mr. Allen's observation of the two bank robbers and the fact that they made him lie on the floor. Mr. Allen's statement did not say that he saw the robbers leave the bank or drive away.

Appellant apparently contends that the affidavit says that Mr. Allen stated that he saw the robbers flee in the blue American Motors product with California license plates. Paragraph 4 merely says, however, that Mr. Allen witnessed the events described in paragraph 3 of the affidavit, concerning the appearance of the robbers, and it also says that Mr. Allen described the vehicle. Although paragraph 4 of the affidavit was not very clearly written, the trial court could tell by examining Mr. Allen's written statement that Mr. Allen did describe a vehicle which he saw outside the bank, but that he did not actually see the robbers flee in the vehicle. There would have been nothing further to be gained by holding an evidentiary hearing. Appellant's offer of proof, which was Mr. Allen's written statement, failed to make any substantial preliminary showing that there was any misrepresentation.

Further, the affidavit recited that Mr. Allen described the vehicle as a blue American Motors product with California license plates. It also recited that an abandoned blue American Motors "Spirit" with California plates was found by the police on January 15, the day of the robbery. The affidavit recited that the Wyoming State Bank had been the victim of an armed robbery, and also recited that the abandoned car contained a homemade replica of a machine gun and masks. The trial court was correct in ruling that even with the allegedly objectionable words deleted, there was sufficient content in the affidavit to support a probable cause finding.

Affirmed.