Robert T. CLEARWATER, Appellant (Defendant),

v.

The STATE of Wyoming, Appellee (Plaintiff).

No. 97–157.

Supreme Court of Wyoming.

April 14, 2000.

Representing Appellant: Sylvia L. Hackl, State Public Defender; Donna D. Domonkos, Appellate Counsel; and Walter Eggers, Assistant Public Defender.

Representing Appellee: William U. Hill, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Hugh Kenny, Senior Assistant Attorney General.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN, and TAYLOR,* JJ.

THOMAS, Justice.

Robert T. Clearwater (Clearwater) asserts three claims of error in his appeal. First, he identifies error in the failure of the trial court to grant his request for a continuance after the prosecution amended the information to eliminate a victim. Second, he claims that his trial counsel was ineffective because he failed to examine a prosecution witness about her intoxication at the time of her testimony and because trial counsel failed to advise Clearwater of his right to testify and present a defense. Finally, Clearwater complains about comments by the prosecutor concerning Clearwater's exercise of his right to remain silent. Our examination of the record in light of the applicable principles of law discloses that none of the claims of error that Clearwater asserts can be sustained. The Judgment and Sentence entered in the trial court is affirmed.

In the Brief of the Appellant, filed on behalf of Clearwater, these issues are raised:

I. Whether the district court erred when it denied the appellant's request for a continuance following notice of the amended information which occurred moments before the start of the trial?

II. Whether the appellant's trial counsel was ineffective when he failed to investigate and call material witnesses to testify, failed to cross-examine the state's star witness about her intoxication at the time of her testimony, and failed to adequately advise the appellant of his right to testify and present a defense?

III. Whether the prosecution's comments on the appellant's silence require reversal of his conviction?

This statement of the issues is found in the Brief of Appellee, filed by the State of Wyoming:

I. Was the district court required, *sua sponte,* to delay the trial because, the State voluntarily limited the evidence it would rely upon to prove the aggravated assault?

II. Was the trial counsel's performance outside the wide range of professionally competent assistance?

III. Did either the prosecution or the defense elicit testimony or comment in any fashion on defendant's silence?

In April of 1996, Clearwater was released to house arrest from the Sheridan County jail, and he was placed in a work release program that required him to wear a security ankle bracelet. He was serving a sentence imposed because of a conviction for driving while under the influence. Clearwater was a long-time Sheridan resident and lawn landscaper, and he lived in a house that he rented from a friend. The rented house was the location specified when Clearwater was released on house arrest. The house was adjacent to the friend's home.

During the course of the rental arrangement, Clearwater began to develop a more personal relationship with his friend, and he visited her frequently. While he was released on house arrest, Clearwater was having difficulty meeting his financial obligations, and he thought he was probably going to have to turn himself back into custody. During this period of time, Clearwater became increasingly aware of illegal drug activity and drug transactions occurring in his friend's house. The people who were on the premises from time to time were transients. He was concerned about the security of his possessions in the rental property while he might be back in jail, and he decided to impress the serious nature of his concerns upon his friend and the victim named in the charge of aggravated assault and battery subsequently filed against him.

---

* Chief Justice at time of expedited conference; retired November 2, 1998.

On the morning of May 21, 1996, the victim was visiting Clearwater's friend when Clearwater telephoned to determine who was there. Within five minutes of learning of the presence of the victim, Clearwater, who had been drinking, went to his friend's house carrying a revolver. In the presence of his friend and the victim, Clearwater fired a bullet through an awning to establish that the gun was loaded. He then went into the house; sat between his friend and the victim; and proceeded to point the revolver at both himself and the victim. The victim testified that this episode lasted nearly twenty minutes, during which time Clearwater pointed the revolver at her several times and threatened to shoot her. After a period of twenty minutes, the victim managed to get Clearwater to calm down, and she talked him into letting her leave the house. After the victim departed, Clearwater's friend gave him something to hide the revolver in, and he returned home. Neither the friend nor the victim informed authorities about this incident at that time.

After Clearwater left, his friend and the victim went to a nearby lake with two other individuals, and they returned to the friend's home later that evening. Upon arriving home, the friend heard shots that Clearwater was firing from his revolver; became concerned about the safety of a neighbor's child; and telephoned the police. The police came to the alley behind the houses, and Clearwater's friend called him and suggested that he empty his revolver and calm down because the police were in the alley. Clearwater's response was that he hoped the police were aiming for his head, because he was aiming at theirs. His friend immediately advised the police of this conversation, and at that time she told the police about the earlier incident that morning.

The three officers who answered the call observed empty shell casings on the back porch and at the side of Clearwater's house. They could see Clearwater through a window, and two of the officers banged on the front door to get his attention. When he did not answer, they went around to the back of the house. From the back door, the two officers could see Clearwater watching televi-sion with a rifle on his lap and a revolver on the arm of the chair where he was sitting. One of the officers aimed his pistol at Clearwater, and told him not to move and to raise his hands above his head. Clearwater refused to comply with this command, keeping his hands only about two feet above the rifle and the revolver. The officer went past Clearwater; grabbed the barrel of the rifle; and pitched it onto a couch across the room. As soon as the officer had removed both weapons, Clearwater became aggressive; verbally abused the officer; slapped him in the head; and knocked his glasses off.

When Clearwater's hand went over the officer's head, the officer hit Clearwater in the chest, and he fell into a corner of the room. Another officer then sprayed pepper spray in Clearwater's face to subdue him, and the first officer handcuffed him. During this entire episode, Clearwater continued to curse the officers, and threatened them and their families. The officers washed out Clearwater's eyes, and took him out to the police car to transport him to the police station. Clearwater again became combative and uncooperative, cursing and threatening the officers.

Ultimately, Clearwater was charged with one count of felony aggravated assault and battery in violation of Wyo. Stat. Ann. § 6-2-502(a)(iii) (Lexis 1999), and two counts of misdemeanor interference with a police officer in violation of Wyo. Stat. Ann. § 6-5-204(a) and (b) (Lexis 1999). His trial was set for two days beginning on January 15, 1997. After the trial date was established and the witnesses had been subpoenaed, Clearwater contacted both his friend and the victim, asking them to change their stories to say that he was waving the revolver around rather than pointing it at the victim.

Two days before the trial was to start, the State filed an Amended Information which had the effect of deleting one of the counts of interference with a peace officer and deleting Clearwater's friend's name as a victim on the aggravated assault and battery charge. The prosecution sent a copy of the Amended Information to Clearwater's counsel, but Clearwater asserted that he never received it from his attorney, whom he fired the morning of

the trial. Clearwater asserted that he should have been informed of the amendment prior to the first day of trial, but he did not request a continuance at that time.

When the trial judge learned that Clearwater had discharged his appointed counsel and wanted to represent himself, the trial judge permitted Clearwater to represent himself, but he also kept Clearwater's attorney there to answer procedural questions during the trial. Clearwater conducted his own voir dire of the jury, and exercised his peremptory challenges. The original appointed counsel then proceeded to act as Clearwater's attorney during the remainder of the trial. After both the defense and the prosecution had examined all the witnesses, the trial court advised Clearwater that he had a right to testify in his own defense as well as the right to remain silent. The trial court also advised him that before he made his decision, he should consult with his attorney. Clearwater elected not to testify. Ultimately, Clearwater was convicted on both of the counts charged, and he takes this appeal from those convictions.

 We turn first to the claim that error occurred because the trial court denied Clearwater's request for a continuance following notice of the Amended Information. The record is contrary to Clearwater's assertion, and demonstrates that he failed to properly request a continuance when he learned that the prosecution had filed an Amended Information on January 13, 1997, two days prior to the trial. This colloquy occurred between the trial judge and Clearwater on the morning of the trial:

THE COURT: Now, at the time that you were arraigned, you were arraigned on three different charges, as you know. You had aggravated assault and battery and, I believe, two charges of interference with a peace officer. The State dropped one of those counts. * * *

* * * So a couple of changes, they dropped one of the counts and then on the aggravated assault and battery. They deleted the name of * * *.

THE DEFENDANT: Why wasn't I informed of this before today?

THE COURT: The Amended Information was only filed yesterday or the day before. But they are charging you with less than they did.

THE DEFENDANT: But shouldn't I have been informed five minutes before Court?

THE COURT: I think you probably should have. But I'm telling you now so that you'll understand—.

THE DEFENDANT: Thank you.

At no time during this conversation was a formal, or even an informal, request made for a continuance.

 In the absence of a request for a continuance or an objection to the refusal of a continuance, Clearwater must rely upon the plain error doctrine to attack the failure to grant a continuance. We adopted the criteria for plain error in *Hampton v. State*, 558 P.2d 504, 507–08 (Wyo.1977), where we said:

While this Court has recognized that the plain error concept must be applied to each case on its own particular facts, and any attempt to define the term "plain error or defects affecting substantial rights" is unlikely to be helpful (*Hays v. State*, Wyo., 522 P.2d 1004 (1974)), still there are some accepted criteria which we invoke when a claim of plain error is presented. When review is sought under the plain error doctrine this Court must be able to discern from the record, without resort to speculation or equivocal inference, what occurred at trial, that is, we are entitled to know the particular facts. E.g., *United States v. Meadows*, 523 F.2d 365 (5th Cir.1975), *Sykes v. United States*, 373 F.2d 607 (5th Cir.1966), *cert. den.* 386 U.S. 977, 87 S.Ct. 1172, 18 L.Ed.2d 138 (1967); *Dimmick v. State*, Alaska, 449 P.2d 774 (1969). Further, the proponent of plain error must demonstrate the existence of a clear and unequivocal rule of law which the particular facts transgress in a clear and obvious, not merely arguable, way. See e.g., *United States v. Dawson*, 486 F.2d 1326 (5th Cir.1973); *United States v. Morales*, 477 F.2d 1309 (5th Cir.1973); *United States v. Campbell*, 419 F.2d 1144 (5th Cir.1969); *United States v. Mooney*, 417 F.2d 936 (8th Cir.1969); *Evans v. State*, Alaska, 550

P.2d 830 (1976). If these criteria are met, the error or defect must adversely affect some substantial right of the accused in order to avoid the application of the harmless error concept procedurally expressed in Rule 49(a), W.R.Cr.P. E.g., *Kotteakos v. United States*, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946); *United States v. Amaral*, 488 F.2d 1148 (9th Cir.1973); *People v. Barker*, 180 Colo. 28, 501 P.2d 1041 (1972). The assertion of a constitutional ground of error will not avoid the application of these criteria, and if they are not satisfied any claim for review under the plain error doctrine must fail. E.g., *Schleicher v. Wyrick*, 529 F.2d 906 (8th Cir.1976); *State v. Malley*, 167 Conn. 379, 355 A.2d 292 (1974); *State v. Dayton*, Mo. App., 535 S.W.2d 469 (1976).

We recently applied those criteria in *Leiker v. State*, 994 P.2d 917, 918–19 (Wyo.1999), and we specifically applied them to a continuance in *Capshaw v. State*, 714 P.2d 349, 352 (Wyo.1986).

The grant or denial of a request for continuance is a discretionary ruling by the trial court, and unless a clear showing of abuse of discretion that results in manifest injustice is presented, this Court does not disturb such a ruling. *Tageant v. State*, 683 P.2d 667, 668–69 (Wyo.1984); *Sims v. State*, 530 P.2d 1176, 1181 (Wyo.1975). The determination must be based upon the facts and circumstances presented in each case. *Sims*, 530 P.2d at 1181. Recently, in *Vaughn v. State*, 962 P.2d 149, 151 (Wyo.1998) (*quoting Martin v. State*, 720 P.2d 894, 897 (Wyo. 1986)), a case presenting as an issue the denial of the defendant's motion for a continuance, we focused upon a particular definition of abuse of discretion, saying:

"Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means a sound judgment exercised with regard to what is right under the circumstances and without doing so arbitrarily or capriciously. *Byerly v. Madsen*, 41 Wash.App. 495, 704 P.2d 1236 (1985)."

In light of the colloquy between the trial court and Clearwater quoted previously and the trivial nature of Clearwater's concern about not receiving timely advice about a reduction in charges, it is clear that no abuse of discretion occurred in this case.

We dealt with the relationship between a decision by a defendant to exercise his constitutional right to represent himself and the right to a continuance in *Irvin v. State*, 584 P.2d 1068, 1073–74 (Wyo.1978), where we said:

From the time that this Court first considered the matter in *Robinson v. State*, 18 Wyo. 216, 106 P. 24 (1910), until now this Court has followed the rule that a motion for continuance based upon the necessity for additional trial preparation is addressed to the sound discretion of the trial court, the exercise of which is subject to review but only for abuse of discretion. *Adger v. State* [584 P.2d 1056 (Wyo.1978) ], supra; *Ash v. State* [555 P.2d 221 (Wyo. 1976) ], supra; and authorities cited therein. The determination as to whether there has been an abuse of discretion is going to depend upon the facts and circumstances of each individual case, as we have recognized in *Ash v. State*, supra, and *Adger v. State*, supra, by our reliance upon *Ungar v. Sarafite*, 376 U.S. 575, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964), *reh. den.*, 377 U.S. 925, 84 S.Ct. 1218, 12 L.Ed.2d 217 (1964). The court is justified in refusing to permit a defendant to manipulate or subvert the orderly procedure of the court in connection with the exercise of his right to counsel. *United States v. Casey*, 480 F.2d 151 (5th Cir.1973), *cert. den.*, 414 U.S. 1045, 94 S.Ct. 550, 38 L.Ed.2d 336 (1973). An extensive compilation of cases dealing generally with the right to counsel and the manner in which courts have disposed of situations in which a defendant wishes to change counsel can be found in *Annot.*, 73 A.L.R.3d 725 (1976). In those instances in which a defendant chooses to represent himself the general rule still is applied that the matter of a continuance is a discretionary matter with the trial court, and the refusal to grant the continuance is not error unless an abuse of discretion is demonstrated. *People v. Bourland*, 247 Cal.[App.]2d 76, 55 Cal.Rptr. 357 (Cal.App. 1967[1966]), *cert. den.*, 388 U.S. 920, 87

S.Ct. 2142, 18 L.Ed.2d 1367 (1967); *People v. Murphy,* 3 Ill.App.3d 345, 277 N.E.2d 721 (1972); *Walker v. State,* 85 Nev. 337, 455 P.2d 34 (1969); *Robertson v. State,* Okl.Crim., 503 P.2d 896 (1972).

Whether the discharge of counsel is supported by sufficient reasons or not is one of the factors which courts have regarded as significant in considering a motion for continuance. *See, e.g., Arellanes v. United States,* 302 F.2d 603 (9th Cir.1962), *cert. den.,* 371 U.S. 930, 83 S.Ct. 294, 9 L.Ed.2d 238 (1962); *Baca v. People,* 139 Colo. 111, 336 P.2d 712 (1959); *People v. Washington,* 41 Ill.2d 16, 241 N.E.2d 425 (1968); *Walter v. State,* 4 Md.App. 373, 243 A.2d 626 (1968); *State v. Pflieger,* 15 Or.App. 383, 515 P.2d 1348 (1973); *State v. Penderville,* 2 Utah 2d 281, 272 P.2d 195 (1954).

In the instant case there was no justification for discharge of counsel. * * *
The court refused to permit Irvin to postpone the trial simply by discharging the public defender who was going to remain and act as standby counsel. If such a tactic were permissible it certainly would represent one way of playing a cat and mouse game with the court. *Ash v. State,* supra.

In *Williams v. State,* 655 P.2d 273, 276 (Wyo. 1982), we held:

> [W]hen a defendant fails to make a timely request to proceed pro se, the trial court has discretion in deciding whether to allow appellant the exercise of the right [to self-representation]. This allowance of discretion is based on the rationale that the State has an interest in avoiding disruptions and delays which could occur if an untimely request to proceed pro se is granted.

Williams made his request on the Friday preceding the Monday on which the trial was to begin, and the court ruled that the request was not made within a reasonable time. *Id.* at 276.

We recognized the constitutional right to self-representation in *Williams,* 655 P.2d at 276, but we also echoed a California court that said:

> [A] defendant should not be permitted to wait until the day preceding trial before he moves to represent himself and requests a continuance in order to prepare for trial without some showing of reasonable cause for the lateness of the request. In such a case the motion for self-representation is addressed to the sound discretion of the trial court.

*Id.* at 276 (*quoting People v. Windham,* 19 Cal.3d 121, 137 Cal.Rptr. 8, 560 P.2d 1187 (1977)). In this instance, even had Clearwater made a formal request for a continuance on the morning of the trial, the trial court was vested with discretion to deny it because there was no reasonable cause to justify delaying the proceedings, particularly when Clearwater's position was improved by the amendment. Further, even though Clearwater was complaining about a lack of notice of the amendment, it is clear that there was no possibility of any prejudice to him. The fact that there was a failure of communication between Clearwater and his attorney, and the fact that he decided to represent himself, discharging his attorney at the last minute, do not force the trial court to afford Clearwater additional preparation time. While this record is clear, it does not support Clearwater's claim that he was denied a continuance. He has not been able to "demonstrate the existence of a clear and unequivocal rule of law which the particular facts transgress in a clear and obvious, not merely arguable, way." *Hampton,* 558 P.2d at 507. Clearwater cannot establish any ruling that did "adversely affect some substantial right," which he held as an accused person. *Id.* at 507. The trial court obviously acted reasonably under these circumstances and did not commit an abuse of its discretion by not granting a continuance *sua sponte.*

In his second claim of error, Clearwater argues that he failed to receive the effective assistance of counsel guaranteed by the Sixth Amendment to the Constitution of the United States. He articulates three specific instances in which he asserts his counsel was ineffective: the failure to investigate and call material witnesses; the failure to cross-examine the State's "star" witness effectively; and the failure to advise Clearwater that he had a right to present a defense.

■ Recently, we revisited the standard that applies to a claim of ineffective assistance of counsel. *Mapp v. State*, 953 P.2d 140, 143 (Wyo.1998). A defendant must prove that his representation was deficient because counsel made errors so serious that the defendant's Sixth Amendment rights were violated, and furthermore, the deficient performance prejudiced the defense because the errors were so serious as to deprive the defendant of a fair trial. *Mapp*, 953 P.2d at 143 (quoting *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). The question of whether counsel acted reasonably may "be determined or substantially influenced by the defendant's own statements or actions." *Frias v. State*, 722 P.2d 135, 145 (Wyo.1986) (quoting *Strickland*, 104 S.Ct. at 2066). With respect to the accusation of the failure to investigate and call material witnesses, Clearwater conceded that of the twenty-four witnesses he believed might provide reliable information about the incidents on May 21, 1996, he had five or six "decent" witnesses that he told his attorney to interview. The attorney interviewed these individuals, and determined that none of them were able to provide any material information. In a Motion for New Trial which was filed, Clearwater's attorney advised the trial court that "Defense counsel and the Public Defender's office exercised reasonable diligence in the interview of identified witnesses provided by the defendant and during those interviews, no information with respect to the drug transactions was obtained." The record establishes that Clearwater's attorney, after reasonable investigation and diligence determined that none of the witnesses that Clearwater identified could testify in a manner that would be helpful about the specific charges against him. His decision not to call these witnesses was sound, and we can find no violation of the standard articulated in *Strickland*, 104 S.Ct. at 2066–67 ("counsel has a duty to make reasonable investigations or to make reasonable decisions that makes particular investigations unnecessary * * *.").

■ As to the claim of the failure to cross-examine the State's star witness about her drinking prior to taking the stand, the record forecloses this claim. During the cross-examination of this particular witness, Clearwater's attorney specifically asked whether or not she had a drink before coming to court that day. The witness testified she "had a drink for lunch." The attorney pursued this line of questioning, pointing precisely to the fact that she came to court to testify after drinking. Furthermore, in making closing argument, the attorney addressed the consumption of alcohol by the witness before she testified "to the point she almost stagger[ed] when she le[ft] the courtroom * * *." We recognized in *Keene v. State*, 835 P.2d 341, 346 (Wyo.1992), that the *Strickland* test was satisfied if counsel identified inconsistencies or damaging information and dwelled upon those facts in opening statement and closing argument. Clearwater's counsel, in light of *Keene*, did all that was required to ensure his client's Sixth Amendment right to effective assistance of counsel in connection with the cross-examination.

■ Lastly, the record is clear that Clearwater was well advised of his right to testify and present a defense. His attorney was forced to make a tactical decision as to whether evidence should be presented in opposition to the State's case. The question is whether this decision fell "outside the ambit of professionally competent assistance." *Gist v. State*, 737 P.2d 336, 342 (Wyo.1987). With respect to Clearwater's right to testify, the attorney based that advice on the following factors: Clearwater's attitude toward the victim; his contact with the victim and the State's star witness after they were subpoenaed, asking them to change their stories; and his multiple pro se filings which included his versions of the event. All of this information would have opened the door to evidentiary rulings on his character that most likely would have assisted in convicting him. The attorney's advice to Clearwater not to testify also is supported by the fact that the State's star witness admittedly drank her lunch prior to her testimony. We conclude that in the circumstances of this case, without any reliable witnesses to treat with any of Clearwater's contentions, the decision of the attorney not to present evidence fell well within the ambit of professionally competent assistance.

We have held that, in order to prevail on appeal, the appellant must show that he was denied his right to testify and that he would have offered relevant testimony if he had testified. *Sanchez v. State,* 841 P.2d 85, 88 (Wyo.1992), *cert. denied,* 516 U.S. 833, 116 S.Ct. 109, 133 L.Ed.2d 62 (1995). The trial court also informed Clearwater of his right to testify telling him, "[t]he decision on whether or not to testify is solely yours. As I've indicated to you before, before you make up your mind on what you want to do, I would suggest that you talk that over with counsel." Clearwater returned with his attorney the following morning and the attorney advised the trial court, "I advised with my client as to his impetus to testify that very likely he might change that, and he's advised me at this point he does not wish to testify." Clearwater had been advised of his right to testify, and his attorney's advice not to testify also came well within the ambit of professionally competent assistance. *Gist,* 737 P.2d at 342. Clearwater has failed to meet his burden with respect to his claim of ineffectiveness of counsel.

 The last issue that Clearwater chooses to present concerns a comment by the prosecutor on his exercise of his right to silence. Clearwater claims this occurred during the examination of witnesses and during the closing argument, and therefore, he is entitled to a reversal of his conviction. The standard for evaluating such claims of prosecutorial misconduct is found in the test articulated in *Knowles v. United States,* 224 F.2d 168, 170 (10th Cir.1955), adopted by this Court in *Oldham v. State,* 534 P.2d 107, 112 (Wyo.1975):

> [W]hether the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify. It is not improper for the government to draw attention to the failure of lack of evidence on a point if it is not intended to call attention to the failure of the defendant to testify.

We then held in *Parkhurst v. State,* 628 P.2d 1369, 1381–82, *cert. denied,* 454 U.S. 899, 102 S.Ct. 402, 70 L.Ed.2d 216 (1981), that not all references to dialogue with an accused person which encompassed some failure by that person to respond must result in a reversal of a conviction. *See also Gomez v. State,* 718 P.2d 53, 55 (Wyo.1986).

The testimony that Clearwater focuses on is set forth in the examination of two police officers. After explaining the facts resulting in the situation with which he was confronted, one officer testified in this way:

> Q Did you enter his residence then at 427½ North Custer?
>
> A Yes, I did. I pulled my pistol back as far as I could to avoid him grabbing it from me. I side-stepped up to him and watched him and grabbed the barrel of the rifle, stepped back. And the couch was back over there (indicating), and I turned and pitched the rifle on the couch. I then went up in the same manner and took the pistol off of the arm of the chair and also threw it back on the couch.
>
> Q Now, during that time did [Clearwater] say anything to you?
>
> A At that time, no.

This dialogue was followed by an explanation in detail of Clearwater's assault upon the officer, and this question by the prosecutor followed by the officer's answer:

> Q Okay. Did—during this time did [Clearwater] say anything to you?
>
> A Yes. He was using profanity. He was saying words to the effect of "Come on, you * * *. Shoot me. Shoot me." He referred to us as all kind[s] of filthy names and—just very agitated.

The officer then testified about Clearwater's actions during the episode which resulted in the officer using pepper spray in Clearwater's eyes; the officers washing Clearwater's eyes; and ultimately putting Clearwater into a patrol car.

With respect to the testimony of the second officer, it also explained the events leading to the interference charge. The prosecutor was not eliciting comments about Clearwater's silence, as the record reveals:

> Q * * *
>
> What happened after you observed [the officer] take away the two guns?

A As soon as [the officer] took the guns away, Mr. Clearwater became very upset, angry, verbally abusive towards us, swearing. I then remember Mr. Clearwater swinging his arm at [the officer] in this manner (indicating), his right arm.

The second officer then offered a detailed description of Clearwater's physical assault on the other officer, including this question and answer:

Q After that happened, what happened next, then?

A After he struck [the officer], * * * he was still very abusive. I remember he made the comment, "Shoot me." He was still swearing at us.

The officer then testified about the events leading up to and following the time when he sprayed Clearwater in the face with pepper spray, stating:

Q During that time — you know, between the time that he was sprayed and the time he was subdued and handcuffed, did he say anything?

A Didn't really say a whole lot. He was—he wasn't verbally abusive towards us at all. He then asked if we could help him wash his eyes out at the sink.

* * *

Q After you did that, did the Defendant say anything else?

A He started becoming angry again, verbally abusive, swearing at us. As we led him out of the kitchen to the patrol car, he made comments that he was going to turn around and kill us, shoot our kids, things to that effect.

Q Now, you have testified here that essentially any conversation during this time with the Defendant included cursing and threats and those type[s] of things. Did he ever say anything other than that? Did he ever say to you or tell you anything other than curse or threats, et cetera?

A No.

It is clear in the context of this record that the prosecutor did not offer these comments to draw attention to Clearwater's exercise of his right to remain silent, but instead to reconstruct the incident and demonstrate Clearwater's mental state and describe his behavior during the incident. These references to Clearwater's silence at different times during the incident do not rise to the level of impermissible comment on the exercise of his right to silence, and, therefore, they are not prejudicial per se as Clearwater would like this Court to believe. The record does not support the claim that there was comment upon the exercise of Clearwater's right to silence. Instead, it would appear that he could not think of any new terms of approbation to direct at the officers when he did not say anything.

■■■ Our rule is that counsel should be afforded wide latitude in making closing argument. *Taul v. State*, 862 P.2d 649, 659 (Wyo.1993). The comments must be considered in the context in which they were made and in the context of the entire argument. *Vargas–Rocha v. State*, 891 P.2d 763, 768 (Wyo.1995). In this case, the comment by the prosecutor during closing argument was a single statement, "[i]n presenting that evidence, the State is simply seeking the truth, simply wants to know what happened. We're not interested in clouding up the issue like the Defendant." At that point, the prosecutor was simply pointing out Clearwater's verbal attack on the police and his threats against their children. This does not qualify as a comment on the exercise of the right to silence, meant to prejudice the defendant and violate his constitutional rights. It was, simply, a summarization of the evidence.

Our examination of this record in light of the applicable principles of law demonstrates that no error occurred such as Clearwater claims. The prosecution dropped one charge and an allegation of an additional victim on the morning of trial, but that only served to benefit Clearwater. The trial judge explicitly informed Clearwater of his right to testify and present a defense, but he chose not to do so. Obviously, the advice of counsel in that regard was correct. The record fails to reveal any ineffectiveness on the part of the appointed counsel. With respect to the claim of comments upon the exercise of Clearwater's right to silence, the record simply does not support the assertion by Clearwater.

The Judgment and Sentence entered in the trial court is affirmed.

THOMAS, Justice, concurring specially.

We have not previously analyzed the relationship between rulings that are reviewable only for an abuse of discretion and "the existence of a clear and unequivocal rule of law which the particular facts transgress in a clear and obvious, not merely arguable, way." *Hampton v. State*, 558 P.2d 504, 507 (Wyo. 1977). I have pondered for some time the logical cohesiveness of a rule that depends for its invocation on "the existence of a clear and unequivocal rule of law which the particular facts transgress in a clear and obvious, not merely arguable, way" and any discretionary ruling of a court. *Id.* The product of my reflection is that a ruling that is subject to review under an abuse of discretion standard is of a different character and quality from a ruling that is subject to *de novo* review. I am satisfied that when a trial judge can exercise a choice with respect to a ruling, so long as the choice is reasonable, there is not present a "clear and unequivocal rule of law," particularly one that is transgressed "in a clear and obvious, not merely arguable, way." *Id.*

I suggest a more appropriate rule for addressing the request for a continuance in this case. The discretionary ruling does not enjoy the status of an unqualified, absolute, conclusive or categorical principle that may be applied without exception, which is how I would define a clear and unequivocal rule of law. The absence of these indicia means that the discretionary ruling fails to qualify as one that manifests transgression "of a clear and unequivocal rule of law which the particular facts transgress in a clear and obvious, not merely arguable, way." *Id.* The disposition of an issue that is subject to the exercise of discretion always is uncertain, and, by its very nature, is inherently equivocal. It follows that any attack upon a discretionary ruling cannot logically be rested upon a claim of plain error because there is no clear and unequivocal rule of law that can be identified. In my view, any claim of plain error that must rest upon an abuse of discretion should be denied summarily without further analy-

sis. Such a ruling by a trial court inherently is equivocal and its transgression can be presented only in an arguable way.

I would. apply this suggestion to affirm with respect to Clearwater's claim that it was error to refuse to grant a continuance.